**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) THE REFERRAL CENTER FOR ALCOHOL   AND DRUG SERVICES OF CENTRAL OKLAHOMA, INC., | ) ) ) | |
| | ) | |
| Plaintiff, | ) ) | Case No.: 5:25-cv-00717-R |
| v. | ) ) | *State Court Case: CJ-2025-3490* Oklahoma County District Court |
| (1) PHILADELPHIA INDEMNITY INSURANCE COMPANY; and (2) FINANCIAL RISK SOLUTIONS, L.L.C., | ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANT PHILADELPHIA INDEMNITY INSURANCE COMPANY'S
<u>RESPONSE TO PLAINTIFF'S MOTION TO REMAND</u>**

Respectfully submitted,


s/Lacy B.  Williamson_____
Grant A. Fitz, OBA No. 19806
Lacy B. Williamson, OBA No. 34004
**GABLEGOTWALS**
100 N. Elgin Avenue, Suite 200
Tulsa, OK 74120-1495
Telephone: (918) 595-4800
Fax: (918) 595-4990
*gfitz@gablelaw.com*
*lwilliamson@gablelaw.com*

***Attorneys for Defendant
Philadelphia Indemnity Insurance Company***

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................... 1

ARGUMENTS AND AUTHORITIES .......................................................................... 3

I.     PLAINTIFF CANNOT AVOID FEDERAL JURISDICTION WITH FALSE
ALLEGATIONS ................................................................................................ 7

II.    PLAINTIFF HAS NO POSSIBLE CLAIM AGAINST THE AGENT ................. 13

      A. Plaintiff has no possible claim for negligent misrepresentation ................. 13

         1.  Plaintiff does not allege facts to establish a duty of disclosure ............ 14

         2.  The element of reasonable reliance is missing ..................................... 15

         3.  Plaintiff does not allege facts showing the alleged omission was
material or it suffered damages as a result ............................................. 16

         4.  The alleged misrepresentations were indisputably true ........................ 17

         5.  Any alleged misrepresentations regarding Philadelphia's claim
handling and application of the policy were promises of
future performance and not fraud ........................................................... 17

         6.  Plaintiff has not pled fraud with particularity ...................................... 19

      B. Plaintiff has no possible claim for negligent procurement ......................... 20

         1.  Plaintiff received the policy allegedly requested ................................. 20

         2.  The element of causation is absent ....................................................... 21

         3.  The Agent had no duty to inspect ........................................................ 22

         4.  Plaintiff had sufficient coverage to replace its roof ............................. 23

         5.  Complaints about the sale of a "form" policy fall under the purview of
the Oklahoma Insurance Department ("OID"), not the court ................ 23

CONCLUSION ............................................................................................................ 24

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Baltasar v. State Farm*,
No. CIV-22-0928-HE, 2023 WL 11883978 (W.D. Okla. Aug. 8, 2023) .... 4, 7, 8, 9

*Barlow v. State Farm*,
No. CIV-25-00044-R, 2025 WL 1139489 (W.D. Okla. Apr. 17, 2025).......... 1, 2, 4

*Bass v. Salco Prods.*,
No. 1:14-CV-288, 2014 WL 12618687 (E.D. Tex. Sept. 19, 2014) ...................... 12

*Boyer v. Snap-on Tools Corp.*,
913 F.2d 108, 111 (3d Cir. 1990) ........................................................................ 11

*Briggs v. Philadelphia*,
No. 3:14CV16-DPJ-FKB, 2014 WL 1355627 (S.D. Miss. Apr. 7, 2014) ............. 18

*Castens v. Conseco Life Ins.*,
No. 11-CV-628-TCK-FHM, 2012 WL 610001 (N.D. Okla. Feb. 24, 2012)......... 21

*Cisneros v. State Farm*,
No. CIV-25-42-R, 2025 WL 1151685 (W.D. Okla. Apr. 18, 2025)................ 1, 2, 4

*Citation Co. Realtors v. Lyon*,
610 P.2d 788 (Okla. 1980) ................................................................................. 18

*CMI Roadbuilding v. SpecSys*,
No. CIV-18-1245-G, 2021 WL 2189190 (W.D. Okla. May 28, 2021).................. 18

*Crawford v. Charles Schwab*,
No. 3:09-CV-0666-G, 2009 WL 3573658 (N.D. Tex. Oct. 30, 2009).................. 12

*Cupit v. Dancu Chem. Co.*,
1957 OK 193, ¶ 7, 316 P.2d 593 ........................................................................ 18

*Dutcher v. Matheson*
733 F.3d 980, 988 (10th Cir. 2013)..................................................................... 11

*Earley v. Allstate Indem. Co.*,
No. 6:13-CV-02203-JEO, 2014 WL 2214518 (N.D. Ala. May 28, 2014)............. 11

4907-3206-0761, v. 1

*Ervin v. Herb Weaver Ins. Agency*, Inc.,
    No. CIV-22-935-SLP, 2022 WL 22839581 (W.D. Okla. Dec. 28, 2022) ............. 13

*Ferrell v. BGF Glob., LLC*,
    No. CIV-15-404-D, 2015 WL 6438988 (W.D. Okla. Oct. 21, 2015) .................... 10

*Gamble v. State Farm Fire & Cas. Co.*,
    No. CIV-25-396-R, 2025 WL 1848818 (W.D. Okla. July 2, 2025) ................ 1, 2, 4

*Gay v. Akin*,
    766 P.2d 985 (Okla. 1988) ................................................................................ 20

*Goebel v. State Farm*,
    No. CIV-22-0882-HE, 2023 WL 11883977
    (W.D. Okla. Aug. 7, 2023) .......................................................... 4, 9, 11, 16, 18, 22

*Gray v. Derderian*,
    464 F. Supp. 2d 105 (D. R.I. 2006) ................................................................ 22, 23

*Green v. Amerada Hess Corp.*,
    707 F.2d 201, 205 (5th Cir. 1983) ...................................................................... 11

*Harris v. State Farm*,
    No. 5:13-CV-61-BO, 2013 WL 3356582 (E.D.N.C. July 3, 2013) ....................... 22

*Hayes v. Charter Oak Fire Ins.*,
    145 P.2d 941, 942 (Okla. 1944) .......................................................................... 15

*Hope v. State Farm Fire & Cas. Co.*,
    No. CIV-25-323-D, ECF No. 18 ...................................................................... 8, 19

*Joseph E. Seagram & Sons, Inc. v. Shaffer*,
    310 F.2d 668 (10th Cir. 1962) ......................................................................... 19, 20

*Lillard v. Stockton*,
    267 F. Supp. 2d 1081 (N.D. Okla. 2003) ................................................. 13, 14, 19

*Long v. Halliday*,
    768 F. App'x 811, 814 (10th Cir. 2019) ............................................................... 12

*Manzella v. Gilbert-Magill Co.*,
    965 S.W.2d 221 (Mo. Ct. App. 1998) ................................................................. 22

iii

*Marino v. State Farm*,
No. CIV-22-885-HE, 2023 WL 11915691 (W.D. Okla. Aug. 7, 2023) .. 4, 9, 16, 22

*Martin v. Allstate Vehicle & Prop., Ins. Co.*,
No. CIV-23-739-SLP, 2024 WL 3510301 (W.D. Okla. July 23, 2024) ................ 13

*Mellon v. Int'l Grp. for Historic Aircraft Recovery*,
612 F. App'x 936 (10th Cir. 2015) ........................................................................ 18

*Newman ex rel. Poston v. Bankers Life & Cas. Co.*,
No. 2:10-CV-02135-DCN, 2010 WL 4638566 (D.S.C. Nov. 8, 2010) ................. 17

*Payne Expl. Co. v. Trident Steel Corp.*,
No. CIV-15-818-D, 2016 WL 1530006 (W.D. Okla. Apr. 14, 2016) .................... 14

*Peerless Ins. Co. v. M.A.S.S. Servs.*,
No. 806-CV-250T-27TGW, 2007 WL 2916386 (M.D. Fla. Oct. 5, 2007) ............ 15

*Pfeiffer v. Hartford Fire Ins. Co.*,
929 F.2d 1484 (10th Cir. 1991) ............................................................................ 19

*Porter v. State Farm*,
No. CIV-25-187-R, 2025 WL 1151682 (W.D. Okla. Apr. 18, 2025) .............. 1, 2, 4

*Pratt v. Safeco*,
2020 WL 4735350 ................................................................................................. 14

*Rain Drop Found., Inc. v. State Farm*,
No. 24-1101-D, 2025 WL 582562 (W.D. Okla. Feb. 21, 2025) .................. 4, 10, 16

*Rodriguez v. Casa Chapa S.A. de C.V.*,
394 F. Supp. 2d 901, 907-08 (W.D. Tex. 2005) ................................................... 11

*Rotan v. Farmers Ins. Grp. of Companies, Inc.*,
83 P.3d 894 (Okla. Civ App. 2004) ...................................................................... 20

*Shelbester v. Triple Crown Insurers*,
1992 OK 20, ¶ 21, 826 P.2d 603 .......................................................................... 21

*Slover v. Equitable Variable Life Ins.*,
443 F. Supp. 2d 1272 (N.D. Okla. 2006) ............................................................. 13

iv

*Smoot v. Chicago, Rock Island & Pacific R.R.*,
378 F.2d 879, 881-82 (10th Cir. 1967)..................................................................... 10

*Stafford v. State Farm*,
No. 5:25-cv-00008-HE (W.D. Okla. May 27, 2025) ................................. 2, 3, 4, 22

*Steinkamp v. State Farm*,
No. CIV-22-00047-PRW, 2023 WL 11920886 (W.D. Okla. Sept. 29, 2023)... 4, 21

*Strahan v. Allstate,*
2015 WL 730055 .................................................................................................... 22

*Swickey v. Silvey Cos.*,
979 P.2d 266 (Okla. Civ. App. 1999)...................................................................... 20

*Trinity Baptist Church v. Brotherhood Mut. Ins. Servs., LLC*,
341 P.3d 75 (Okla. 2014) ....................................................................................... 21

*United Adjustment Services, Inc. v. Professional Insurors Agency, LLC,*
2013 OK CIV APP 67, 307 P.3d 400....................................................................... 22

*Vance v. State Farm*,
No. CIV-23-260-SLP (W.D. Okla. March 25, 2023)............................................... 12

*Warren v. State Farm Fire & Cas. Co.*,
No. CIV-25-85-JD, ECF No. 22........................................................... 8, 10, 12, 19

*Weichbrodt v. State Farm Fire & Cas. Co.*,
No. CIV-25-360-R, 2025 WL 1848819 (W.D. Okla. July 2, 2025) ................ 1, 2, 4

*Woodward v. N.Y. Life Ins.*,
No. CIV-07-1067-HE, 2008 WL 11337956 (W.D. Okla. Jan. 28, 2008) .............. 21

**State Cases**

*Austin v. Allstate*,
No. CJ-2024-524 (Cleveland Cnty.)......................................................................... 8

*Roberson v. State Farm Fire and Casualty Company, et al.*,
No. CJ-2024-3950, 2025 WL 582562 (Okla. Cnty. Dec. 4, 2024) ...................... 4, 8

*Wedin v. Allstate*,
No. CJ-2023-181 (Rogers Cnty.) ............................................................................. 8

4907-3206-0761, v. 1

## Rules

FED. R. CIV. P. 11(b)...............................................................................................9

Rule 9(b) ..............................................................................................................19

Rule 11..................................................................................................................12

## Statutes

36 O.S. § 607(A).................................................................................................23

36 O.S. § 1205 ....................................................................................................23

36 O.S. § 3622 ......................................................................................................6

36 O.S. § 3622(B)...........................................................................................15, 16

## Other

Britton Weimer, Law of Commercial Agents § 1:5 (2023) ............................................15

NAIC, https://content.naic.org/about; Glossary of Insurance Terms,
NAIC, https://content.naic.org/glossary-insurance-terms
(both last visited April 19, 2025).....................................................................................5

4907-3206-0761, v. 1

## **INTRODUCTION**

This case is simply a claim dispute between Plaintiff and Defendant Philadelphia Indemnity Insurance Company ("Philadelphia") regarding the extent of storm damage to The Referral Center for Alcohol and Drug Services of Central Oklahoma, Inc.'s (the "Referral Center") property and whether the roof needs to be replaced. The merits of this dispute has nothing to do with Plaintiff's agent, Financial Risk Solutions, LLC ( "FRS"), who, as agent, has no authority over, and is not involved in, claims handling.

In five <u>virtually identical</u> cases brought by Plaintiff's counsel, (1) *Barlow v. State Farm*, No. CIV-25-00044-R, 2025 WL 1139489 (W.D. Okla. Apr. 17, 2025), (2) *Cisneros v. State Farm*, No. CIV-25-42-R, 2025 WL 1151685 (W.D. Okla. Apr. 18, 2025),[1] (3) *Porter v. State Farm*, No. CIV-25-187-R, 2025 WL 1151682, at *1 (W.D. Okla. Apr. 18, 2025), (4) *Gamble v. State Farm Fire & Cas. Co.*, No. CIV-25-396-R, 2025 WL 1848818 (W.D. Okla. July 2, 2025), and (5) *Weichbrodt v. State Farm Fire & Cas. Co.*, No. CIV-25-360-R, 2025 WL 1848819 (W.D. Okla. July 2, 2025), the Court denied the plaintiffs' motions to remand and observed the "scheme" that the same Plaintiff's counsel alleged against State Farm in those cases as follows:

> [T]he agent sells an insurance policy to the customer and in doing so "expressly and/or impliedly represents" that the property meets State Farm's underwriting

---

[1] In *Cisneros*, the plaintiffs filed a Motion for Reconsideration. This Court denied the plaintiffs' motion and provided the plaintiffs "repeatedly described the agent as making 'inherent' or 'implied' representations. Plaintiffs' belated attempt to recharacterize their allegations or bolster their argument does not support reconsideration. But regardless, the alleged misrepresentations have no causal connection to Plaintiffs' damages and therefore cannot support a claim against the agent." *Cisneros*, CIV-25-42-R, 2025 WL 1841864, at *1-2. "The Court did not overlook [plaintiffs'] argument, it simply disagreed with Plaintiff's position." *Id.* at *2.

guidelines, the replacement cost value the agent calculated is accurate, and the policy covers wind and hail damage. State Farm issues the policy, the insured suffers a loss from wind or hail, and State Farm then denies the claim based on an undisclosed and narrow definition of wind damage and a variety of bad faith claims handling tactics.

*See, e.g.*, *Barlow*, 2025 WL 1139489, at \*2 (citations omitted). Seeing past the facade, the Court held—"**with complete certainty**"—"**Plaintiffs do not have a potentially viable claim for negligent procurement of insurance or negligent misrepresentation/constructive fraud against the [Agent] Defendants**." *Id.* at \*2 (emphasis added).

The Court distinguished Plaintiff's counsel's earlier cases where remand was granted, observing the allegations of "affirmative statements" in those cases had been replaced with new allegations of "implied" representations:

> Plaintiffs [here] do not plead that the insurance agent made affirmative statements about the scope of coverage, the condition of the property, or the agent's underwriting duties. **Instead, they primarily rely on "inherent" or "implied" representations that insurance agents purportedly make every time they market, bind, and sell a policy**. *See, e.g.* Pls.' Br. at 1 ("In every instance of the Scheme, State Farm's captive agents inherently represent to the insured —by virtue of the act of marketing, selling, and binding State Farm replacement cost insurance coverage – that the property at issue meets State Farm's underwriting guidelines, qualifies for the coverage stated in the policy, and is free from any defect that would negate that coverage.").

*Id.* at \*3, n.5. In denying a motion to remand in another case brought by Plaintiff's counsel using a similar petition, Judge Heaton observed that "[t]he fact that a claim under a policy is denied, or paid at a level less than that sought by the insured, does not, without more, render the policy illusory." Order at 5, *Stafford v. State Farm*, No. 5:25-cv-00008-HE (W.D. Okla. May 27, 2025), ECF No. 25, Ex. 1.

2

4907-3206-0761, v. 1

A similar form petition filed in *Barlow*, *Cisneros*, *Porter*, *Gamble*, *Weichbrodt*, and *Stafford* was filed in this case, and Plaintiff is making the same argument here. *Compare* Ex. 2, 3, 4, 5, 6, and 7 with Petition [Dkt. 1-1]. Thus, the same result should follow: remand should be denied.

**<u>ARGUMENTS AND AUTHORITIES</u>**

Plaintiff alleges the Referral Center obtained a Philadelphia Replacement Cost Commercial Lines Policy No. PHPK2629151 ("Policy") for its property through FRS. [Dkt. 1-1 at ¶¶ 10-11]. Plaintiff alleges the Referral Center's property was damaged by wind and hail on May 19, 2024. *Id.* at ¶ 16. Philadelphia had the properties inspected on or about January 14, 2025 and determined there was minor hail damage to the soft metal components of the roof, no wind or hail damage to the roof, and the interior water damage was caused by ponded water on the roof and condensation from the HVAC equipment. *Id.* at ¶¶ 16-18. Philadelphia determined the covered damage fell below the Plaintiff's $10,000 deductible. *Id.* at ¶ 18. Plaintiff alleges it retained a roofing contractor who advised that the property required a total roof replacement and estimated damages at $283,909.98. *Id.* at ¶ 19.

Against this backdrop, Plaintiff alleges, on the one hand, FRS failed to procure full replacement cost coverage for wind and hail, as requested. [Dkt. 1-1 at ¶ 13]. On the other hand, Plaintiff admits (and the Referral Center's Policy shows) it had replacement cost coverage for wind and hail. *Id.* at ¶ 11 ("Defendant Philadelphia Indemnity insures the Insured Property owned by Plaintiff pursuant to a Replacement Cost Commercial Lines Policy."). Clearly, Plaintiff disputes Philadelphia's claim decision and not any act or

3

omission of FRS, who Plaintiff sued merely to evade diversity jurisdiction.

Similar cases abound. Before the Court denied remand in *Barlow*, *Cisneros*, *Porter*, *Gamble*, *Weichbrodt*, and *Stafford*, Judge DeGiusti denied remand in *Rain Drop Found., Inc. v. State Farm*, No. 24-1101-D, 2025 WL 582562 (W.D. Okla. Feb. 21, 2025), citing Judge Wyrick's order denying remand in *Steinkamp v. State Farm*, No. CIV-22-00047-PRW, 2023 WL 11920886 (W.D. Okla. Sept. 29, 2023). The Court reasoned, in short:

> As requested, [the Agent] procured replacement cost insurance. **Plaintiff's alleged damages arose, not because of the type of insurance procured, but because State Farm refused to replace Plaintiff's roof**.

2025 WL 582562, at *4 (emphasis added); *see also Roberson v. State Farm Fire and Casualty Company, et al.*, No. CJ-2024-3950 (Okla. Cnty. Dec. 4, 2024) (granting agent motion for summary disposition of insured's "illusory coverage" and "pre-coverage inspection" claims), Ex. 8. Here, too, Plaintiff received the insurance coverage it allegedly requested—replacement cost insurance for wind and hail. *See* [Dkt. 1-1, ¶ 11; Policy, Ex. 9. Here, too, remand should be denied.

In its Motion, Plaintiff relies almost exclusively upon an earlier body of cases filed against State Farm Fire and Casualty Company by the same counsel as Plaintiff's counsel here and removed to federal court. Admittedly, most of those cases were remanded. But as this Court observed, the new cases are different. Almost certainly in response to the few earlier cases where remand was denied, *Marino v. State Farm*, No. CIV-22-885-HE, 2023 WL 11915691 (W.D. Okla. Aug. 7, 2023); *Goebel v. State Farm*, No. CIV-22-0882-HE, 2023 WL 11883977 (W.D. Okla. Aug. 7, 2023); *Baltasar v. State Farm*, No. CIV-22-0928-HE, 2023 WL 11883978 (W.D. Okla. Aug. 8, 2023), Plaintiff's counsel rewrote their form

4

petition. They removed the ***affirmative***, oral representations found fraudulent and now allege the agent representations were ***implied*** by the agent by "binding" coverage. But in doing so, Plaintiff stretches credulity too far.

To assert a claim against FRS, Plaintiff requires the Court to accept a characterization of insurance agents that is false under all industry standards, and certainly not the role of independent agents, such as FRS. An insurance agent is not an underwriter, home inspector, or claims adjuster. Plaintiff's arguments ask this Court to accept these false characterizations as true merely because they are pled. That is not the law, and the Court should not permit Plaintiff to evade federal court by creating and alleging non-existent factual or legal duties. Moreover, FRS here is an independent agency, they do not sell insurance products for only Philadelphia, further negating Plaintiff's argument that FRS is complicit in an alleged pattern and practice of Philadelphia denying full roof replacements in wind and hail claims.

The National Association of Insurance Commissioners ("NAIC") is an organization that provides "expertise, data, and analysis for insurance commissioners to effectively regulate the insurance industry and protect consumers" and defines agents, adjusters, and underwriters as follows:[2]

- An "agent" is "an individual who sells, services, or negotiates insurance policies either on behalf of a company or independently."
- An "underwriter," is a "person who identifies, examines and classifies the degree of risk represented by a proposed insured in order to determine whether

---

[2] Our Story, NAIC, https://content.naic.org/about; Glossary of Insurance Terms, NAIC, https://content.naic.org/glossary-insurance-terms (both last visited April 19, 2025).

5

or not coverage should be provided and, if so, at what rate."

- An "adjuster" is "a person who investigates claims and recommends settlement options based on estimates of damage and insurance policies held."

Oklahoma law defines binding as "temporary insurance" that becomes "invalid" when the policy issues, 36 O.S. § 3622, the entire point of which is to provide some coverage while the insurance company performs the underwriting.

Nevertheless, Plaintiff asks this Court to disregard these statutory and industry-defined roles, and instead accept, under the rubric that all pled facts are true, (1) insurance agents are required to inspect Plaintiff's property at policy inception and at each renewal, after which (2) the "binding" of coverage by the agent constitutes a representation that the property is in good condition and meets underwriting guidelines, and (3) if Philadelphia determines claimed wind or hail damage does not exist, then (4) the agent must have made a misrepresentation as to the condition of the property when he/she bound coverage. Further, by failing to tell the insured that Philadelphia might deny a claim in the future due to an alleged "pattern and practice" to deny claims, the agent omitted information he/she was obligated to tell the insured. Notably, Plaintiff does not confront whether the failure to also tell the insured that thousands upon thousands of claims are paid every year is also an actionable omission or how that fits into the pattern and practice. There is no basis in the law to support these theories. Simply put:

- Agents are not inspectors. Plaintiff alleges agent never inspected the property, but Plaintiff was not owed an agent inspection. In fact, the Policy provides there is no obligation to "make any inspections, surveys, reports or recommendations". *See* Policy at 88, Ex. 9.

- Agents are not underwriters. Binding coverage is a placeholder based on information provided by the insureds for the period during which Philadelphia

6

does the actual underwriting. Binding coverage makes no implied representations about the condition of the property.

- Agents are not adjusters. The agent has no duty to, is not authorized to, and is not alleged to have made any representations about claim handling.

The Policy Philadelphia issued has the replacement cost coverage Plaintiff allegedly wanted, and it covers wind and hail damage. Plaintiff had more than sufficient insurance coverage to replace its roof if replacement was required. *See* Pet., ¶ 11 ("Plaintiff secured Policy Limits for its Insured Property of $1,760,000"). Plaintiff merely disagrees with Philadelphia's claim decision.

## I.    PLAINTIFF CANNOT AVOID FEDERAL JURISDICTION WITH FALSE ALLEGATIONS.

The chart attached to Defendant's Notice of Removal [Dkt. 1-6] shows this is one of an implausible and increasing number of cases against not only Philadelphia but other insurers by the same group of attorneys alleging dozens of agents from different insurance companies and different independent agents, as in this case, made the same misrepresentations and committed identical underwriting failures. After State Farm proved with the aid of discovery through the insureds' own testimony that the alleged representations by their agents did not happen and Judge Heaton warned Plaintiff's counsel "the filing of a pleading in this court containing false and/or inaccurate statements . . . [would] result in significant sanctions," *Baltasar v. State Farm*, No. CIV-22-0928-HE, 2023 WL 11883978, at *2 (W.D. Okla. Aug. 8, 2023), Plaintiff's counsel amended their form petition.

Instead of alleging agents made all the same affirmative statements to all of the insureds in all the same words about inspections, property conditions, and policy terms, the

7

insureds now allege Philadelphia is involved in "bad faith claims handling practices" to deny and underpay wind and hail claims, and FRS "perpetuated the fraud". *See* Mot. at 2. According to Plaintiff's counsel, Philadelphia is not the only insurer operating this scheme. For example, they have also sued Allstate, contending it has embarked on a "systematic and pervasive Scheme" to deny and underpay claims. Pet., ¶¶ 33–40, *Wedin v. Allstate*, No. CJ-2023-181 (Rogers Cnty.), Ex. 10; Pet., ¶¶ 18–21, *Austin v. Allstate*, No. CJ-2024-524 (Cleveland Cnty.), Ex. 11.

The "pattern and practice" is a fiction created to evade federal jurisdiction as demonstrated by the web of allegations in which Plaintiff's counsel have been repeatedly caught in cases similar to this one, most notably in cases against State Farm. *See, e.g.*, *Warren v. State Farm Fire & Cas. Co.*, No. CIV-25-85-JD, ECF No. 22 (Plaintiff's counsel claiming they accidentally pleaded specific allegations of fraud against a brand-new agent and an agency that did not exist when the policy was procured); *Hope v. State Farm Fire & Cas. Co.*, No. CIV-25-323-D, ECF No. 18 (same). The claims against FRS are based on Plaintiff's allegation that the Referral Center did not receive the full replacement cost coverage it requested but instead received "illusory" coverage. [Dkt. 1-1 at ¶¶ 48, n.5, 59, 71].[3] But as Judge Heaton noted, "[n]o presumption against removal jurisdiction can or should insulate a plaintiff from misrepresentations like those involved here[.]" *Baltasar*,

---

[3] Plaintiff's allegations of illusory coverage simply have no basis in the language of Plaintiff's Policy, which is the legal instrument that governs the scope of its insurance coverage. Recognizing as much, Judge Brent Dishman recently granted an agent's motion for summary disposition of an insured's similar "illusory coverage" and "pre-coverage inspection" claims. *See Roberson*, Ex. 8.

2023 WL 11883978, at *2. Attorneys have a duty to ensure that, after reasonable inquiry, factual contentions have evidentiary support. FED. R. CIV. P. 11(b).

Agents, such as FRS, are pawns in Plaintiff's counsel's scheme to litigate in a more favorable forum. Agents are individuals with employees and families whose livelihoods depend on their honesty and integrity, yet they are hauled into court and sued for fraud simply because they live in Oklahoma and Plaintiff's counsel want to litigate in what they believe to be a more favorable forum. Judge Heaton allowed jurisdictional discovery in two cases that established, as he suspected, the allegations filed by Plaintiff's counsel were manufactured in an attempt to state a claim against the agents and evade federal court; thus, the motions to remand were denied. *See Goebel*, 2023 WL 11883977 at *2, 3 (observing "petition filed by plaintiffs [wa]s replete with false statements" and "no good faith basis for a substantial portion of the facts alleged"); *Marino*, 2023 WL 11915691 at *3 ("There are, in short, multiple allegations going to the potential liability of [the agent] for which there is zero evidence, indicating that those allegations were made without a valid, good faith basis.").

In *Baltasar*, the plaintiff signed an affidavit in support of her Motion to Remand contradicting allegations made by her counsel in her Petition. *Baltasar*, 2023 WL 11883978, at *1. Her counsel blamed the inconsistencies on a "scrivener's error." *Id.* at 2. The Court "decline[d] to play plaintiff's—more accurately plaintiff's counsel's—game":

> To suggest that factual discrepancies like those described above are "scrivener's errors" is ridiculous on its face. . . . Plainly, many of the central allegations here as to Kiburz not only lack evidentiary support—they are simply false. No presumption against removal jurisdiction can or should insulate a plaintiff from misrepresentations like those involved here, and the

9

court declines to allow plaintiff to now attempt to create some new set of theories based on different facts from those initially alleged.

*Id.; see also Warren*, No. CIV-25-85-JD, ECF No. 22 (Plaintiff's counsel claiming they accidentally sued an agency for fraud that did not exist when the policy issued).

Judge DeGiusti acknowledged in *Rain Drop* "the cookie-cutter character of the allegations here is suspicious," and pointed out that plaintiff cited to and made allegations about terms that did not appear in the plaintiff's policy, "lending credence to the possibility that there is no good faith basis [for plaintiff's allegations]." 2025 WL 582562, at *3. This pattern shows Plaintiff's counsel make the same cookie-cutter allegations in each case without investigating or verifying the veracity of those facts, hoping an "if we allege it, it is true" standard will prevail to defeat federal jurisdiction. *See*, *e.g.*, *Warren, supra*.

The fraudulent nature of the Petition is clear from the limited record—which disproves Plaintiff's allegations the Referral Center received "illusory" coverage, FRS failed to procure replacement cost insurance coverage for wind or hail (*see* further argument below, the Policy itself proves otherwise), FRS failed to calculate policy limits (Plaintiff indisputably had sufficient coverage to replace its roof), and the claim was denied due to a "pre-existing condition" that FRS missed during an inspection it had a duty to perform (*see* further argument below). Remand cannot be based on a sham. *Smoot v. Chicago, Rock Island & Pacific R.R.*, 378 F.2d 879, 881-82 (10th Cir. 1967). "The heavy burden placed upon Defendants to prove fraudulent joinder does not mean this Court must 'blindly accept' whatever Plaintiff asserts, 'no matter how incredible or how contrary to the overwhelming weight of the evidence.'" *Ferrell v. BGF Glob., LLC*, No. CIV-15-404-

10

D, 2015 WL 6438988, at *3 (W.D. Okla. Oct. 21, 2015).

Plaintiff argues Philadelphia has failed to satisfy the first ground articulated in *Dutcher v. Matheson* to establish fraudulent joinder—arguing that by "fraud in the pleading of jurisdictional facts," the court meant only fraud related to the "residency of its Oklahoma-based agents." [Dkt. 10 at 10]. In other words, Plaintiff is telling this Court it is okay to include fraudulent allegations in a petition to evade federal jurisdiction as long as those allegations do not speak to the diversity-destroying defendant's domicile.[4] That is not the law.

In *Dutcher*, the Tenth Circuit observed fraudulent joinder could be established by a showing of (1) "actual fraud in the pleading of jurisdictional facts" or (2) "inability of the plaintiff to establish a cause of action against the non-diverse party in state court." 733 F.3d 980, 988 (10th Cir. 2013). Both are satisfied here. In denying remand in *Goebel* and *Marino*, Judge Heaton found both avenues were met but focused on the first prong when discussing false allegations in the petitions. *See Goebel,* 2023 WL 11883977 at *2–3. This approach is consistent with that taken by other courts which have found, like Judge Heaton, that a plaintiff cannot "l[ie] to establish a putative party as a 'strawman' to defeat jurisdiction." *Rodriguez v. Casa Chapa S.A. de C.V.*, 394 F. Supp. 2d 901, 907-08 (W.D.

---

[4] The cases cited by Plaintiff does not stand for the notion only fraud in the pleading of the non-diverse defendant's domicile is sufficient to establish fraudulent joinder. In *Earley v. Allstate Indem. Co.*, No. 6:13-CV-02203-JEO, 2014 WL 2214518, at *3 (N.D. Ala. May 28, 2014), the court in suggesting the only relevant facts in assessing the first *Dutcher* prong are "citizenship of the parties and the amount in controversy," cited to cases that focused on the second *Dutcher* prong. *See Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990); *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir. 1983).

11

Tex. 2005) (holding "actual fraud in the pleading of jurisdictional facts can encompass other facts proximately leading to jurisdictional concerns").[5]

Regardless of how it is analyzed, <u>courts agree a plaintiff cannot make up facts to state a claim against a non-diverse defendant</u> and deprive a foreign defendant of its right to litigate in federal court. Considering an attorney's obligations under Rule 11, "fraudulent joinder based on actual fraud in the pleading of jurisdictional facts" should never occur, and thus it makes sense why "[f]ew courts have addressed [it]." *Bass v. Salco Prods.*, No. 1:14-CV-288, 2014 WL 12618687, at *3 (E.D. Tex. Sept. 19, 2014). Plaintiff effectively admits its plan to evade federal court at all costs,[6] citing cases against insurance companies based on the same allegations and theories where courts have granted motions to remand relying on the heavy burden the law imposes on non-forum defendants attempting to establish fraudulent joinder. Although courts in the Tenth Circuit have called the burden "heavy," they have not hesitated to recognize fraudulent joinder when it occurs. Thus, while the burden is heavy, it can be met and is met here. *See, e.g., Long v. Halliday*, 768 F. App'x 811, 814 (10th Cir. 2019).

---

[5] Others analyze fraud in the pleadings under prong 2. *See Bass v. Salco Prods.*, No. 1:14-CV-288, 2014 WL 12618687, at *4 (E.D. Tex. Sept. 19, 2014); *Crawford v. Charles Schwab*, No. 3:09-CV-0666-G, 2009 WL 3573658, at *2 n.2 (N.D. Tex. Oct. 30, 2009).

[6] The plan was apparent in *Vance v. State Farm*, when—after State Farm removed the case demonstrating the agent sued did not sell or renew the policy—Plaintiffs' counsel filed a Motion for Dismissal, claiming the petition was "mistakenly filed and served," and urging if the Court did not dismiss, they would be forced to do the unthinkable and pursue their claims against State Farm in this Court. *See* Mot. for Dismissal at 1-2, *Vance v. State Farm*, No. CIV-23-260-SLP (W.D. Okla. March 25, 2023), ECF No. 5. Apparently, this happens often. *See, e.g., Warren*, No. CIV-25-85-JD, ECF No. 22 (same).

## II.    PLAINTIFF HAS NO POSSIBLE CLAIM AGAINST THE AGENT.

### A.    Plaintiff has no possible claim for negligent misrepresentation.

Plaintiff's insistence that this case be remanded like certain other cases filed by Plaintiff's counsel is wrong, particularly in light of Plaintiff's counsel's revisions to their form petitions to avoid Judge Heaton's findings and insurance companies' arguments of fraud in the pleadings. These changes amplify the flaws in Plaintiff's legal theories.

In *Ervin* and *Martin*, for example, the Court observed the insured alleged their agent informed them "their roof met all underwriting requirements" and "there was nothing about the condition of the roof that would exclude coverage." *Ervin v. Herb Weaver Ins. Agency*, Inc., No. CIV-22-935-SLP, 2022 WL 22839581, at *2 (W.D. Okla. Dec. 28, 2022); *Martin v. Allstate Vehicle & Prop., Ins. Co.*, No. CIV-23-739-SLP, 2024 WL 3510301, at *4 (W.D. Okla. July 23, 2024) (same). These alleged statements are premised on a flawed conception of an agent's duty and, in any event, these allegations of ***affirmative*** representations do not exist here.

Plaintiff must prove the following elements to recover for negligent misrepresentation/constructive fraud: (1) Agent owed a duty of full disclosure, (2) Agent misstated a fact or failed to disclose a fact to Plaintiff, (3) Agent's misstatement or omission was material; (4) Plaintiff relied on the misstatement or omission, and (5) Plaintiff suffered damages as a result. *Lillard v. Stockton*, 267 F. Supp. 2d 1081, 1113 (N.D. Okla. 2003). For remand, "plaintiff[s] must make at least minimal factual allegations . . . as to every material element of the claim." *Slover v. Equitable Variable Life Ins.*, 443 F. Supp. 2d 1272, 1279 (N.D. Okla. 2006). Plaintiff has not and cannot do so.

13

1.    **Plaintiff does not allege facts to establish a duty of disclosure.** Unlike *Ervin* and Martin, Plaintiff does not allege FRS made affirmative representations about inspections or the condition of Plaintiff's property. Rather, Plaintiff's allegation is that FRS implied the roof on Plaintiff's property was in good condition simply by "binding" its policy. [Dkt. 1-1 at ¶¶ 52, 56, and 57]. Nor is than allegation that FRS made affirmative representations about claim handling and hail determination. To the contrary, Plaintiff alleges FRS did not disclose Philadelphia's alleged pattern and practice to deny/underpay claims.

Negligent misrepresentation cannot be based on silence or an implied representation alone. Plaintiff must show FRS owed it "a duty of full disclosure." *Lillard*, 267 F. Supp. 2d at 1113. The allegations in the Petition and Motion do not establish that FRS owed Plaintiff a duty to speak. "The duty to speak 'may arise if a party selectively discloses facts that create a false impression.' If a false impression is conveyed by disclosing some facts and concealing others, the concealment is in effect a false representation." *Pratt v. Safeco*, 2020 WL 4735350 at *2 (citations omitted). As in *Pratt*, Plaintiff here "do[es] not allege that [the agent] conveyed a false impression by disclosing certain material facts and concealing others." *Id.* Its allegation is that FRS said nothing at all about the condition of its property, how Philadelphia handles claims of property damage, or other facts about Philadelphia's "pattern and practice." [Dkt. 11 at 23]. FRS was "under no duty to speak," and Plaintiff cannot possibly state a claim against its agent for constructive fraud. *See id.*; *Payne Expl. Co. v. Trident Steel Corp.*, No. CIV-15-818-D, 2016 WL 1530006, at *5 (W.D. Okla. Apr. 14, 2016) (facts failed to allege defendant "had a duty to disclose to [p]laintiff

14

information relating to the allegedly defective casing" where complaint did "not identify any partial disclosure of facts").

      **2.**        <u>**The element of reasonable reliance is missing.**</u> Plaintiff impermissibly conflates an agent's limited role in policy issuance ("binding") and the insurer's subsequent underwriting and carrying out of the policy terms. To the extent an agent's act of "binding" a policy could serve as a representation of the condition of Plaintiff's property (it cannot), it would only be a representation to Philadelphia, not a representation to the insured.

       As Philadelphia explained in its Notice of Removal, "binding authority" does not mean the agent had authority to "bind" (require) Philadelphia to issue a policy or carry out the Policy in any particular way. "'[B]inding authority' [] refer[s] to the insurance industry concept of an insurance agent's ability to temporarily 'bind' coverage, which occurs prior to the insurer's issuance of a policy." *Peerless Ins. Co. v. M.A.S.S. Servs.*, No. 806-CV-250T-27TGW, 2007 WL 2916386, at \*7 n. 11 (M.D. Fla. Oct. 5, 2007). The agent's binding authority is limited to issuance of a binder, which is valid for a short period of time, known as a "look and see period" to give the insurance company time to perform underwriting and determine whether the property is an acceptable risk. 36 O.S. § 3622(B); *Hayes v. Charter Oak Fire Ins.*, 145 P.2d 941, 942 (Okla. 1944). *See* Britton Weimer, Law of Commercial Agents § 1:5 (2023) ("A binder is a temporary contract of insurance… it will temporarily protect the insured ... until a formal policy is issued").

       Plaintiff applied for a policy. After Philadelphia's underwriting department examined the risk and determined to provide coverage, Philadelphia issued the Policy on which Plaintiff sues. Whatever binder existed expired the date the Policy issued. *See* 36

15

O.S. § 3622(B) ("No binder shall be valid beyond the issuance of the policy with respect to which it was given. . . ."). The "written policy supersedes the binder." *Weimer*, *supra*. Thus, if issuance of the Policy constitutes a representation about the condition of Plaintiff's property or satisfaction of underwriting requirements (as theorized by Plaintiff), that can only be a representation by Philadelphia, not the agent.

3.   **Plaintiff does not allege facts showing the alleged omission was material or it suffered damages as a result.** Further fatal to Plaintiff's claims are that any alleged misrepresentations about inspections and the condition of the property did not cause the damages for which Plaintiff complains. Plaintiff sues only because Philadelphia found less damage than Plaintiff alleges. The Petition alleges Plaintiff's property was damaged by wind and hail. [Dkt. 1-1 at ¶ 14]. Philadelphia inspected the property, retained an engineer, and found covered damage to Plaintiff's property. *Id.* at ¶¶ 16, 18. Philadelphia's alleged refusal to pay prevented Plaintiff from obtaining a total roof replacement. *Id.* at ¶ 28. Thus, the only dispute here is whether Philadelphia correctly determined the scope of damage to the property and the cost to repair same. This dispute has nothing to do with FRS, who has no authority to adjust or pay claims.

Even accepting Plaintiff's pleading as true and applying Plaintiff's allegations to the elements of negligent procurement, the allegations cannot result in Plaintiff's proposed damages because Plaintiff's requested policy was procured. As shown above, Plaintiff admitted it received the policy it wanted. Plaintiff's alleged damages arose, not because of the type of insurance procured, but because Philadelphia allegedly failed to find additional damage to Plaintiff's roof. *See Rain Drop*; *Goebel*; and *Marino, supra*.

16

**4.      The alleged misrepresentations were indisputably true.** Any implied representations by FRS that the property met all underwriting requirements or was eligible for full replacement coverage are not actionable misrepresentations because they were true. [Dkt. 10 at 15, 23]. Plaintiff's property did satisfy underwriting and qualified for replacement cost coverage, so Philadelphia issued the Policy.

The Policy under which Philadelphia estimated to pay Plaintiff for the damaged property, and under which Plaintiff sues and seeks benefits, is a policy with a replacement cost provision. Plaintiff's Policy covers wind and hail damage. [Dkt. 1-1 at ¶¶ 11, 18]. Plaintiff admits that in evaluating its claim, Philadelphia found hail damage and provided an estimate for it, but Plaintiff believes the roof should be replaced. *Id.* at ¶¶ 18-22; *see also Newman ex rel. Poston v. Bankers Life & Cas. Co.*, No. 2:10-CV-02135-DCN, 2010 WL 4638566, at *3 (D.S.C. Nov. 8, 2010) (agent fraudulently joined where plaintiff alleged she requested policy that covered dementia and defendants agreed the policy covered dementia, even though insurer denied claim for benefits). Plaintiff all but concedes the correctness of Philadelphia's position by suing Philadelphia for bad faith breach of Plaintiff's Policy. *See generally* Dkt. 1-1. Plaintiff likewise concedes it had enough coverage to replace its roof if it was totaled, negating all relevance of the theory the agent had a duty to calculate RCV coverage sufficient to restore Plaintiff's property to its pre-loss condition. Plaintiff admits "this isn't an underinsurance case." [Dkt. 10 at 21].

**5.      Any alleged misrepresentations regarding Philadelphia's claim handling and application of the policy were promises of future performance and not fraud.** As to alleged patterns and practices involving claim handling and application of policy terms

17

in future claim handling, [Dkt. 1-1 at ¶ 45], FRS is not tasked with the duties of a claims adjuster, had no obligation to guess at future claims that Plaintiff might bring, and then inform it of what Philadelphia might do with such a future claim. *See Goebel*, 2023 WL 11883977 at *4 (agent has no duty to advise the insured as to anything that might conceivably limit the payment of a future claim). Thus, FRS cannot be liable for not having spoken about a future claim. "[F]or a false representation to be the basis of fraud, such representation must be relative to existing facts or those which previously existed, and not as to promises as to future acts." *Citation Co. Realtors v. Lyon*, 610 P.2d 788, 790 (Okla. 1980); *CMI Roadbuilding v. SpecSys*, No. CIV-18-1245-G, 2021 WL 2189190, at *3 (W.D. Okla. May 28, 2021) (same requirement for constructive fraud); *Briggs v. Philadelphia*, No. 3:14CV16-DPJ-FKB, 2014 WL 1355627, at *3-4 (S.D. Miss. Apr. 7, 2014) (finding no reasonable basis for success against agent on claim for negligent misrepresentation where complaint accused him of promising the insurer "would fairly and accurately assess any damage and adjust any claim the Plaintiffs might have . . . and pay to [] Plaintiffs the cost to repair or replace the Plaintiffs' home").

Moreover, the Oklahoma Supreme Court has long-held a representation about whether insurance coverage extends to a particular claim is merely an opinion—not a statement of fact—which is in no event a material misrepresentation. *Cupit v. Dancu Chem. Co.*, 1957 OK 193, ¶ 7, 316 P.2d 593, 596 (holding a statement about coverage is "not a misrepresentation . . . of facts but a mere statement of opinion"); *see also Mellon v. Int'l Grp. for Historic Aircraft Recovery*, 612 F. App'x 936, 938 (10th Cir. 2015) (only misrepresentations of facts are actionable). Clearly, opinions about coverage for future

18

claims are not actionable.

**6.** **Plaintiff has not pled fraud with particularity.** Though Plaintiff goes to great lengths to argue the Petition satisfies Rule 9(b), insisting it pled "when" and "where" the representations occurred and "what" was said, Plaintiff's Motion points to only general representations its counsel claims every insurance agent makes through the act of "binding" or renewing a policy (which has been separately demonstrated as untrue).[7]

Plaintiff attempts to create a "catch all" fraud claim by alleging a pattern and practice by Philadelphia that *independent* agents allegedly participate in. But, even assuming specificity as to agent "patterns and practices" was pled (and it is not), each element of the pattern and practice presumes an obligation by the agent that does not exist. It is furthermore based on failures to speak, or implied representations, that are not actionable. While Plaintiff apparently had no qualms about accusing FRS of fraud by implication and omissions—simply because it is an agency in Oklahoma—the law takes assertions of fraud and deceit much more seriously, imposing on Plaintiff a duty to plead its claims with particularity to protect the reputation of the defendants. *Joseph E. Seagram*

---

[7] This same argument by Plaintiff's counsel backfired in *Warren*, *supra,* after it was revealed their who, what, when, and where allegations were lodged against a brand new agent and his agency that did not even exist when the policy was procured. The same thing happened in *Hope*, *supra.* And here, while the Petition alleges "Defendants" as a group—Agent and Philadelphia—made these representations, their Motion rewrites the Petition to claim they were made by Agent alone. *See Lillard*, 267 F. Supp. 2d at 1102 ("[W]here fraud is alleged against multiple defendants, blanket allegations of fraud couched in language such as 'by the defendants' are insufficient. Instead, the specifics of the alleged fraudulent activity of each defendant must be set forth."). It is not true and it is not permissible. *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1488 (10th Cir. 1991) ("the propriety of removal is judged on the complaint as it stands at the time of the removal").

*& Sons, Inc. v. Shaffer*, 310 F.2d 668, 676 (10th Cir. 1962); *Gay v. Akin*, 766 P.2d 985, 993 (Okla. 1988). Plaintiff completely fails that standard.

> **B.**      **Plaintiff has no possible claim for negligent procurement.**

While Oklahoma law recognizes a cause of action for negligent procurement against an insurance agent, the circumstances are limited. *Swickey v. Silvey Cos.*, 979 P.2d 266, 268 (Okla. Civ. App. 1999). "An agent has the duty to act in good faith and use reasonable care, skill and diligence in the procurement of insurance." *Id.* at 269. Only if "by the agent's fault, insurance is not procured as promised and the insured suffers a loss" as a result can an agent be liable in tort for breaching this duty of care. *Id.* The scope of the agent's duty is limited to needs disclosed by the insured. *Rotan v. Farmers Ins. Grp. of Companies, Inc.*, 83 P.3d 894, 895 (Okla. Civ App. 2004). Agents "do not have a duty to advise an insured with respect to his insurance needs…a general request for adequate protection and the like does not change this duty." *Id*. at 895.

> **1.**      **<u>Plaintiff received the policy allegedly requested</u>.** Plaintiff's negligent

procurement claim is difficult to follow. Plaintiff alleges it requested "full replacement cost commercial insurance coverage" from Philadelphia. [Dkt. 1-1 at ¶ 10]. Coverage was provided in excess of $1.7 million. *Id*. at ¶ 11. Plaintiff does not then explain how the policy procured was different than what it requested. Plaintiff likewise acknowledges Philadelphia estimated to repair items of Plaintiff's property damaged by hail, *Id.* at ¶¶ 16, 18, which proves the Policy covers wind and hail (and frankly, there is no colorable argument to the contrary).

Plaintiff also suggests that, although Agent procured a policy with a replacement

20

cost provision, Plaintiff did not actually qualify for it. However, Plaintiff's property clearly qualified for a policy with a replacement cost provision—Philadelphia issued a policy and estimated for hail damage under it, and now Plaintiff sues on that Policy. Philadelphia simply found less damage than what Plaintiff claims. If it is later determined Philadelphia was wrong, the roof was damaged by the storm, or a total roof replacement was necessary, that may give rise to a claim for breach of contract against Philadelphia, but not a claim against FRS, because the agent has no duty to ensure Philadelphia pays a claim on the policy. "[A]n insurance agent who acts on behalf of a disclosed principal is not liable for the principal's breach of contract." *Woodward v. N.Y. Life Ins.*, No. CIV-07-1067-HE, 2008 WL 11337956, at *2 (W.D. Okla. Jan. 28, 2008); *Shelbester v. Triple Crown Insurers*, 1992 OK 20, ¶ 21, 826 P.2d 603, 608 (same).

2. **The element of causation is absent.** Plaintiff accuses Philadelphia of "conflat[ing] its own unlawful claims handling with [Agent's] role in its bad faith pattern and practices." [Dkt. 10 at 14]. However, the only injury identified is Philadelphia's refusal to pay to replace Plaintiff's roof. That decision had nothing to do with FRS or the policy it procured. The decision was made by Philadelphia as part of its non-delegable duty to investigate and to evaluate Plaintiff's claim. *Trinity Baptist Church v. Brotherhood Mut. Ins. Servs., LLC*, 341 P.3d 75, 86 (Okla. 2014). Plaintiff's alleged damages, therefore, flowed from Philadelphia's actions and not "from the breach of the agent's duty of care." *Castens v. Conseco Life Ins.*, No. 11-CV-628-TCK-FHM, 2012 WL 610001, at *2 (N.D. Okla. Feb. 24, 2012); *Steinkamp v. Philadelphia*, No. CIV-22-00047-PRW, 2023 WL 11920886, at *2 (W.D. Okla. Sept. 29, 2023) (finding plaintiff could not state a claim

21

against agent, reasoning "Philadelphia denied the claim not because of the type of policy [the agent] procured, but because it determined that her roof did not sustain a covered loss. . . . In short, Plaintiff's claim against Philadelphia depends upon what damage her roof sustained, not the terms of her policy."). *See also Harris v. State Farm*, No. 5:13-CV-61-BO, 2013 WL 3356582, at *3 (E.D.N.C. July 3, 2013) (finding agent was fraudulently joined where issue was not the adequacy of the policy's coverage, but how State Farm carried out its contractual duties to the policyholder).

The element of causation is absent here. Plaintiff has no answer for it.[8] Plaintiff's entire theory against FRS is a circuitous way of improperly alleging bad faith against an agent. *See, e.g., United Adjustment Services, Inc. v. Professional Insurors Agency, LLC,* 2013 OK CIV APP 67, ¶ 21, 307 P.3d 400, 404–405 (an insured cannot bring a bad faith claim against an insurance agency or its agent because they are not parties to the contract.).

**3.** **The Agent had no duty to inspect.** Plaintiff tries to expand an agent's duty from one to procure insurance to one to inspect Plaintiff's properties. Plaintiff cites no law for this duty. Courts are in agreement that an agent owes no underwriting duty, or a duty to inspect, to the insured. *Stafford, supra.*; *Marino*, 2023 WL 11915691 at *3; *Goebel*, 2023 WL 11883977 at *4; *Gray v. Derderian*, 464 F. Supp. 2d 105, 110 (D. R.I. 2006) (insurer had no duty to inspect insured property); *Manzella v. Gilbert-Magill Co.*, 965 S.W.2d 221, 229 (Mo. Ct. App. 1998) (refusing to find agent had legal duty to customers to abide by

---

[8] *Strahan v. Allstate* is inapposite. There, payment of the plaintiff's claim, was delayed for more than a year because of agent's failure to procure coverage and the insured may have suffered damages as a result of the delay. 2015 WL 730055, at *3.

underwriting guidelines in placing coverage). Insurers conduct underwriting to recognize and reduce their risk, and not as a service to inform prospective (or existing) insureds of the condition of their property. *Gray*, 464 F. Supp. 2d at 109. A business model that required an inspection of every house insured would be impossible. As stated above, the Policy tells the insureds Philadelphia has no obligation to inspect their property. *See* Policy at 88, Ex. 9.

**4.**      **Plaintiff had sufficient coverage to replace its roof.** Finally, Plaintiff makes multiple confusing and irrelevant allegations about FRS's alleged calculation of RCV. *See, e.g.*, [Dkt. 1-1, ¶¶ 55-60]. In its Motion, Plaintiff agrees it is not underinsured, and does not contend it is overinsured due to FRS's negligence. Rather, the argument is that by providing a replacement cost value calculation, FRS "doubled down on its representation that it had inspected the Insured Property, considered their condition, and calibrated the policy and its limits accordingly." [Dkt. 10 at 21]. The act of providing a replacement cost estimate cannot form the basis of a constructive fraud claim.

**5.**      **Complaints about the sale of a "form" policy fall under the purview of the Oklahoma Insurance Department ("OID"), not the court.** The OID has special competence to address the form of a policy, which must be approved for sale via the Commissioner's issuance of a certificate of authority. 36 O.S. § 607(A). Additionally, the OID has special authority to regulate and investigate the very kind of complaint Plaintiff alleges here – misrepresentation and unfair practice in the sale of an insurance policy. [Dkt. 1-1, ¶ 70]; *see* 36 O.S. § 1205. Plaintiff alleges Philadelphia uses a "form insurance policy" to perpetuate a fraudulent "pattern and practice" to deny claims for full roof replacement.

*Id.* at ¶ 43, 45. This complaint is within the special province of the OID to address, and the OID should be allowed to do so in the first instance.

## CONCLUSION

The thrust of Plaintiff's fraudulently asserted allegations – that every insurance agent in Oklahoma, even independent ones, who procures coverage effectively warrants through "implied" representations that a future claim made by the insured will not be denied by the insurer – has no basis in the law. Philadelphia Indemnity Insurance Company respectfully requests that Plaintiff's Motion to Remand be denied.

24

4907-3206-0761, v. 1

Respectfully submitted,


s/Lacy B.  Williamson_____
Grant A. Fitz, OBA No. 19806
Lacy B. Williamson, OBA No. 34004
**GABLEGOTWALS**
100 N. Elgin Avenue, Suite 200
Tulsa, OK 74120-1495
Telephone: (918) 595-4800
Fax: (918) 595-4990
*gfitz@gablelaw.com*
*lwilliamson@gablelaw.com*

***Attorneys for Defendant***
***Philadelphia Indemnity Insurance Company***


## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2025, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Reggie N. Whitten
Michael Burrage
Blake Sonne
Hannah Whitten
John S. Sanders
Jake Denne
WHITTEN BURRAGE
512 North Broadway Avenue, Suite 300
Oklahoma City, OK 73103
***Attorneys for Plaintiff***


s/Lacy B. Williamson_____
Lacy B. Williamson


25