CJ 2024-8243
Dishman



## IN THE DISTRICT COURT OF OKLAHOMA COUNTY
## STATE OF OKLAHOMA

WILMA and TERRY PORTER,

    *Plaintiffs,*

v.

STATE FARM FIRE AND CASUALTY
COMPANY, JEFFREY "JEFF" G.
MILLERD, an individual, and MILLERD
INSURANCE AND FINANCIAL
SERVICES, LLC,

    *Defendants.*

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

**DEC 20 2024**

CASE NO. ___RICK WARREN___
COURT CLERK
136 _____

# CJ-2024-8243

## PETITION

EXHIBIT
4

## I.    INTRODUCTION

1.    This Petition alleges a systematic and pervasive Scheme on the part of (a) Defendants State Farm Fire and Casualty Company ("State Farm") and (b) State Farm's Agent Jeffrey "Jeff" G. Millerd and Millerd Insurance and Financial Services, LLC ("Agent").[1] By and through their Scheme, Defendants have caused substantial harm to Plaintiffs.

2.    State Farm is a household name—it holds itself out as a premier provider of insurance products under the slogan "Like a good neighbor, State Farm is there." State Farm's marketing lures insureds with customer-focused messaging designed to build trust among a diverse target audience. State Farm's website brags about "keeping promises" and that its success "is built on a foundation of shared values—quality service and relationships, integrity and financial strength."

3.    Despite its hollow "good neighbor" promises, Defendants employ a systematic and pervasive Scheme throughout Oklahoma, whereby State Farm wrongfully denies its insureds' claims for damage to their covered property caused by wind and/or hail. State Farm's claim denials on wind and hailstorm claims are unreasonable, lack true justification and are pre-determined. Defendants employ the Scheme intentionally, knowingly, and purposefully for profit and do so in bad faith.

4.    Defendants' wind and hailstorm scheme (the "Scheme") operates as follows:

a.    State Farm's captive agents (including Agent) sell a form insurance policy to the insured at the insured's behest to cover the insured's home. In doing so, State Farm's agent expressly and/or impliedly represents (i) the property to be insured meets State Farm's underwriting requirements for the coverage bound, and (ii) the replacement cost

---

[1] This Petition refers to both State Farm and Agent collectively as "Defendants."

value (and resultant coverage limit) State Farm's agent calculated for the insured is accurate.

b.      State Farm's agent wholly fails to disclose the Scheme to the insured or advise the insured of any of the Scheme's realities, all of which operate to negate the coverage the policy purports to afford the insured. State Farm's agent fails to disclose material information about State Farm's scheme in violation of duties owed to the insured. State Farm uses a very narrow and limited definition of what constitutes hail damage that is not contained in the insureds' policies. State Farm uses this definition to dictate whether or not an insured is entitled to payment upon the filing of a valid wind and/or hailstorm claim, and State Farm agents further the Scheme by refusing to disclose this material information of the narrow and limited definition of hail damage when selling insureds their State Farm policy. State Farm agents also fail to disclose certain bad faith claims handling tactics that would be material information to an insured when purchasing an insurance policy.

c.      State Farm issues a policy purporting to convey coverage for the insured's home. State Farm captive agents expressly and/or impliedly represent this coverage includes coverage for loss arising from a wind or hailstorm. The policy language does not define or otherwise limit hail damage coverage outside the policy monetary coverage limits and the loss triggering clause: "accidental direct physical loss."

d.      The insured incurs a covered loss to the insured property arising from wind or hailstorm and timely files a claim.

e.      State Farm denies the claim as part of its Scheme. It does so using an array of (i) undisclosed definitions and coverage limitations that are entirely absent from the four

3

corners of the policy, and (ii) bad faith claims handling tactics that are rigged against the insured.

f.      When subjected to the Scheme, an insured has no choice but to file suit to recover benefits State Farm owes under the policy. State Farm's treatment of Plaintiffs (including bad faith claims handling tactics and material misrepresentations and/or omissions by State Farm and State Farm agents ) exemplifies this Scheme in action, as the Petition sets forth in Section III, below.

## II.      PARTIES

5.      **Plaintiffs Wilma and Terry Porter** ("Plaintiffs") owned the Insured Property in Lincoln County, Oklahoma. Plaintiffs entered into a contract of insurance with State Farm to provide replacement cost coverage for the Insured Property, dwelling insurance policy no. 36-CL-X245-5 (the "Policy") through Agent's offices. The Policy was in force and effect at the time of the loss in question. The Insured Property was damaged on approximately May 14, 2022. Plaintiffs timely filed a claim for indemnity under the Policy for damage to the Insured Property (the "Claim", No. 36-42M9-97W).

6.      **Defendant State Farm Fire and Casualty Company** ("State Farm") is a foreign insurer licensed to do business in the State of Oklahoma. State Farm may be found and served via its statutory service agent the Oklahoma Insurance Department in Oklahoma County, Oklahoma.

7.      **Defendants Jeffrey "Jeff" G. Millerd and Millerd Insurance and Financial Services, LLC** owned and operated a captive State Farm agency in Payne County located at 3916 W 6th Avenue, Stillwater, OK 74074. Plaintiffs refer to both Jeffrey "Jeff" G. Millerd and Millerd Insurance and Financial Services, LLC as "Agent" throughout this Complaint; on information and belief, they are one in the same. Agent was at all relevant times an agent and/or ostensible agent of Defendant State Farm.

4

a. Jeffrey "Jeff" G. Millerd may be served with process at his primary business location at 3916 W 6th Avenue, Stillwater, OK 74074.

b. Millerd Insurance and Financial Services, LLC may be served with process through its registered agent, Jeffrey G. Millerd, at 31 Arbor Circle, Stillwater, OK 74076.

8.    Agent is a properly joined defendant to this action. *See Bartholomew v. State Farm Fire & Cas. Co.*, 2022 WL 22879674 (W.D. Okla. Dec. 16, 2022) (Jones, D.J.); *Nelson v. State Farm Fire & Cas. Co.*, 647 F. Supp. 3d 1189 (W.D. Okla. 2022) (DeGiusti, C.D.J.); *McDow v. State Farm Fire & Cas. Co.*, 2022 WL 17960457 (W.D. Okla. Dec. 27, 2022) (Friot, D.J.); *Ervin v. Herb Weaver Ins. Agency, Inc.*, 2022 WL 22839581 (W.D. Okla. Dec. 28, 2022) (Palk, D.J.); *Kyger v. State Farm Fire & Cas. Co.*, 649 F. Supp. 3d 1200 (W.D. Okla. 2022) (DeGiusti, C.D.J.); *Sexton v. State Farm Fire & Cas. Co.*, 2023 WL 11917022 (W.D. Okla. Jan. 5, 2023) (Jones, D.J.); *Phillips v. State Farm Fire & Cas. Co.*, 2023 WL 336142 (W.D. Okla. Jan. 20, 2023) (DeGiusti, C.D.J); *Christy v. State Farm Fire & Cas. Co.*, 2023 WL 2933312 (W.D. Okla. Apr. 13, 2023) (Russell, D.J.); *Shira v. State Farm Fire & Cas. Co.*, 2023 WL 4624701 (W.D. Okla. July 19, 2023) (Russell, D.J.); *Whitby v. State Farm Fire & Cas. Co.*, 2023 WL 11763365 (N.D. Okla. Aug. 21, 2023) (Frizzell, D.J.); *Stacy v. State Farm Fire & Cas. Co.*, 2023 WL 11915451 (W.D. Okla. Dec. 29, 2023) (Wyrick, D.J.); *Champion v. State Farm Fire & Cas. Co.*, 2023 WL 11944492 (W.D. Okla. Dec. 29, 2023) (Wyrick, D.J.); *Ross v. State Farm Fire & Cas. Co.*, 2024 WL 1092540 (W.D. Okla. Mar. 13, 2024) (Dishman, D.J.); *Jessop v. State Farm Fire & Cas. Co.*, 2024 WL 3400543 (E.D. Okla. July 12, 2024) (Melgren, D.J.); *Stayton v. State Farm Fire & Cas. Co.*, (N.D. Okla. April 20, 2023) (Kern, D.J.); *Killingsworth v. State Farm Fire & Cas. Co.*, (N.D. Okla. April 21, 2023) (Kern, D.J.); *Bean v. State Farm Fire & Cas. Co.*, (N.D. Okla. June 26,

2024) (Cartwright, D.J.). As Agent is a citizen of the forum-state, removal of this action by any Defendant would be improper.

9.      Venue is proper pursuant to 12 O.S. § 137.

## III.      FACTUAL BACKGROUND

10.      State Farm has preordained the denial of its insureds' valid claims for hail damage through various undisclosed tactics which are weaponized against first-party insureds like Plaintiffs. This decision reflects simple greed: maximizing profits for State Farm at the expense of its insureds.

11.      To achieve this end, State Farm knowingly developed and implemented its enterprise-wide, pervasive, and systematic Scheme. State Farm implements the Scheme throughout Oklahoma using a variety of bad faith tactics and employees at every level of State Farm. State Farm even employs biased third-party companies on its behalf to rubber-stamp and approve of its bad faith tactics in furtherance of the Scheme.

12.      This case exemplifies the Scheme in action. State Farm's treatment of Plaintiffs and the Claim demonstrates each step in the Scheme leading to State Farm's intended outcome.

## A.      State Farm's Captive Agents Anchor the Scheme

13.      In each instance, State Farm's Scheme begins with its captive agents (including Agent), who sell a State Farm form insurance policy to the insured at the insured's behest.

### 1.      State Farm Agent's Duties in Procuring Coverage

14.      State Farm captive agents solicit and market what they tout as a replacement cost homeowners insurance coverage to prospective insureds. State Farm uses a form insurance policy to issue homeowners coverage in Oklahoma—while the amount of coverage (and premiums charged therefor) differ from insured to insured, the scope of coverage is in large part materially the same for all insureds subjected to the Scheme.

15. State Farm considers its agents to be the first line of its underwriting division. State Farm's Agent plays a crucial role in the sale of State Farm's insurance policy to the insured. This role creates key legal duties, which State Farm's Agent owes to the insured:[2]

a. State Farm's agents must use reasonable care, skill, and diligence to procure coverage as the insured requested that meets the insured's stated needs;

b. State Farm's agents who undertake the calculation of replacement cost for the insured must use reasonable care, skill, and diligence to do so; and

c. When State Farm's agents speak, they owe a duty to do so accurately and truthfully.

d. State Farm agents have a duty to speak and to fully disclose all material information to an insured about State Farm's bad faith claims handling tactics, its reliance on undisclosed definitions and standards outside of the Policy, internal and external complaints about State Farm's handling of wind and hailstorm claims, and other material information any insured would deem reasonable in making a purchasing decision.

16. Industry standards, as well as agents' legal duty of reasonable skill, care, and diligence in the procurement of insurance, require State Farm's agents to act in accordance with the training and contractual requirements State Farm imposes upon them. These requirements and

---

[2] Under Oklahoma law, a duty to speak may arise from a partial disclosure. *Thrifty Rent-A-Car Sys., Inc. v. Brown Flight Rental One Corp.*, 24 F.3d 1190, 1195 (10th Cir. 1994) (the law imposes a duty to speak from a partial disclosure because "the speaker is under a duty to say nothing or to tell the whole truth" (citation and internal quotation marks omitted)); *Uptegraft v. Dome Petroleum Corp.*, 764 P.2d 1350,1353-54 (Okla. 1988) ("Although a party may keep absolute silence and violate no rule of equity, yet, if he volunteers to speak and to convey information which may influence the conduct of the other party, he is bound to disclose the whole truth."); *see also Ervin v. Herb Weaver Ins. Agency, Inc.*, 2022 WL 22839581 (W.D. Okla. Dec. 28, 2022) (Palk, D.J.)

training exist to ensure policyholders receive the coverage they request and Agent binds coverage in accordance with their representations to the insured and State Farm's internal guidelines.

17. Agent markets as much on Agent's website:



### Homeowners Insurance in and around Stillwater

#### Home Is Where Your Heart Is

Your home and property have monetary value. Your home is more than just a roof over your head. It's all the memories packed in and attached to it. Doing what you can to keep your home protected just makes sense! A great next step is to get outstanding homeowners insurance from State Farm.

#### A good neighbor helps you insure your home with State Farm.

The key to great homeowners insurance.

### Why Homeowners In Stillwater Choose State Farm

You'll get that and more with State Farm homeowner's insurance. State Farm has coverage options to keep your largest asset safe. You'll get a policy that's adjusted to match your specific needs. Thank goodness that you won't have to figure that out by yourself. With true commitment and excellent customer service, Agent Jeff Millerd can walk you through every step to create a policy that shields your home and everything you've invested in.

More homeowners choose State Farm[5] as their home insurance company over any other insurer. Stillwater homeowners, are you ready to see what the State Farm brand can do for you? Contact State Farm Agent Jeff Millerd today.

[3]

18. State Farm agents ***should*** meet these duties by *inter alia* performing an in-person inspection of the Insured Property prior to the inception of coverage and routinely thereafter to verify the condition and attributes of the Insured Property for the purposes of (a) the agent's accurate calculation of replacement cost and (b) the agent's accurate representation that the Insured Property qualifies for coverage under State Farm's guidelines. Indeed, not all homes automatically

---

[3] https://www.jeffmillerd.com/insurance/homeowners (last visited December 17, 2024).

qualify for State Farm's homeowners policies—only those which meet its internal guidelines and thus constitute a "good risk" for State Farm to insure.

19.     The policy is a contract—one that obligates State Farm to indemnify its insured upon the occurrence of a covered loss. State Farm's issuance of an insurance policy to an insured contains certain critical representations: namely, that the property identified in the policy declarations meets the criteria for the coverage prescribed at the time of inception or renewal.[4] The agent further expressly and/or inherently represents that no condition, pre-existing damage, deterioration, wear-and-tear, or other defect negates the property's eligibility for full coverage under the policy.

20.     State Farm's agent must inspect the property to determine this eligibility for coverage under State Farm's internal underwriting requirements. There is no other way for the agent to gather the information it needs to accurately relay to State Farm (and the insured) whether the property rightfully meets the criteria for coverage.

21.     Most captive State Farm agents have binding authority. That means they instruct State Farm to issue coverage. In doing so, the agent represents to both State Farm and the insured that the property meets certain criteria and is eligible for coverage. This representation is repeated each time the policy renews, such that the agent represents the property's eligibility (and, thereby, the absence of any condition that would negate that eligibility), each policy year upon renewal.

22.     In the event State Farm's agent finds the property fails to quality for replacement cost coverage (e.g., the roof is too old, too worn, in poor condition, or otherwise affected by pre-existing conditions), State Farm's agent owes an independent duty to report the same to both the

---

[4] This must be true, for the issuance of coverage upon a property that does not qualify at the time would constitute an illusory coverage violation.

insured and to State Farm. This should result in reduction, denial, or cancellation of coverage. Of course, this determination would first require a physical inspection of the roof.

23.     Ultimately, State Farm's agent binds coverage for the property on behalf of State Farm. State Farm then issues a resultant homeowners insurance policy only when all binding criteria are met. Remarkably, State Farm's agents almost never perform or acquire an in-person inspection of the property to be insured. This means they represent the property's eligibility to both State Farm and the insured recklessly and blindly, without ever verifying whether that representation is true, in almost every instance of the Scheme.

24.     This consistent misrepresentation is a necessary furtherance of the Scheme in each instance; State Farm's agents cannot bind a policy without first representing the property qualifies for coverage. Agent thus relies on the same training to make the same or similar representations that each Insured Property is eligible for the coverage sought under the same underwriting guidelines. This uniformity allows State Farm to effectuate its Scheme with consistency.

**2.     Agent's Treatment Exemplifies the Scheme.**

25.     Agent's treatment of Plaintiffs exemplifies the Scheme and shows it in action:

a.     Plaintiffs contacted Agent to procure full replacement cost homeowners insurance coverage from State Farm. Plaintiffs requested Agent obtain a replacement cost policy that would provide coverage for the Insured Property in the event of a loss.

b.     To that end, Plaintiffs expressly and/or inherently disclosed concerns and insurance needs to Agent. Above all, given Oklahoma's extreme weather, Agent is aware that the Plaintiff needs coverage under a policy that would fully replace the Insured Property's roof in the event of a loss, without exclusion of any weather-related losses.

c.     By virtue of the act of procuring the Policy and binding coverage (without limitation), agent independently established, calculated, and set the Policy's replacement

cost value and resultant policy coverage limits. Neither Agent nor State Farm required or otherwise asked Plaintiffs to calculate or request a specific amount of coverage for the Insured Property. Instead, Agent insured the Insured Property to 100% of its alleged replacement cost value, as Agent determined utilizing State Farm's valuation software and information from Agent's purported inspection.

d.    By virtue of the act of procuring the Policy and binding coverage (without limitation), Agent independently selected and calculated coverage and expressly and/or inherently conveyed that such coverage limit was accurate, correct, commensurate with actual reconstruction costs, and represented 100% of the Insured Property's insurance to value.

26.    In furtherance of the Scheme, Agent committed the following strategic and material *omissions*:

a.    Neither Agent nor State Farm ever inspected the Insured Property or procured such an inspection from a third party.

b.    Neither Agent nor State Farm ever verified the Insured Property's condition, characteristics, attributes, etc.—whether at Policy inception or upon each subsequent annual renewal of the Policy.

c.    Neither Agent nor State Farm ever disclosed to Plaintiffs that the Insured Property was ineligible for the requested replacement cost coverage for any reason.

11

d.    Neither Agent nor State Farm ever advised Plaintiffs that the Insured Property had any defect, pre-existing damage, or other conditions that would exclude it from replacement cost coverage.[5]

e.    Neither Agent nor State Farm ever advised Plaintiffs of any condition that would exclude the Insured Property's roof from full replacement cost coverage.

f.    Neither Agent nor State Farm ever advised Plaintiffs of State Farm's Scheme, including but not limited to State Farm's internal and clandestine definitions of "hail damage," "wear and tear," "granular loss," "functional damage," etc. Instead, Agent by virtue of the act of procuring the Policy and binding coverage (without limitation), acts to ensure coverage for the Plaintiff under the Policy for all fortuitous losses and that all weather-related damages—be it big or small, functional or cosmetic—regardless of the severity, nature or type was covered.

g.    Neither Agent nor State Farm required or otherwise asked Plaintiffs to calculate or request a specific amount of coverage for the Insured Property.

h.    Neither Agent nor State Farm disclosed to Plaintiffs that the value Agent calculated for the Insured Property and resultant coverage limits did not in fact represent 100% insurance to value.

27.    Nevertheless, and under the cover of Agent's strategic and material omissions, Agent procured and State Farm issued the Policy.

---

[5] As explained above, had Agent identified any such condition, Agent would have been required to report the same to both Plaintiffs and State Farm.

12

28.    Given Agent's purported expertise and specialized knowledge of insurance policies, Plaintiffs reasonably relied on Agent's representations. Other than answering Agent's questions, Plaintiffs had *no* input in Agent's replacement cost calculations.

**B.    State Farm Uses a Form Policy to Perpetuate the Scheme**

29.    State Farm uses a form replacement cost policy to issue homeowners insurance coverage in Oklahoma. This form policy is integral to the Scheme: the *scope* of coverage for each insured State Farm subjects to its Scheme is effectively and materially the same, notwithstanding differences in coverage *amounts* or premiums paid or endorsements added to bolster or strip away coverage.

30.    State Farm and its agents (like Agent) represent the form policy to be a replacement cost policy. Just as with any subject property insured under a form policy, the coverage limit for the Insured Property is keyed to its replacement cost value, such that the Policy should afford an amount of coverage that represents the full amount needed to replace the Insured Property in the event of a loss. State Farm, through its agents, voluntarily assumes the responsibility of calculating both the replacement cost value and the resultant coverage limit for the insured.

31.    State Farm's replacement cost policy functions like an "all risk" policy: if the policy does not expressly exclude a loss, then the policy should afford coverage for the loss. Thus, State Farm's form policy affords coverage for the property in question for damage resulting from hail because hail damage is not expressly excluded from coverage. The form policy speaks only to "accidental direct physical loss" therefrom.

> **COVERAGE A – DWELLING**
>
> *We* will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in SECTION I – LOSSES NOT IN-SURED or otherwise excluded or limited in this policy. However, loss does not include and we will not pay for any *diminution in value*.

32.    The policy does not define, limit, or otherwise mitigate coverage for wind or hail damage outside of "accidental direct physical loss" therefrom.

33.    The form policy itself purports to provide the broadest form of coverage available today. State Farm's form policy cover page (and, therefore, the Policy's cover page) states as follows:



Remarkably, none of the enumerated "limitations and exclusions" in the Policy exclude or limit wind/hail damage coverage based on the degree of wind damage sustained, any number of hail hits, etc. Rather, all of these very real limitations exist in State Farm claims handling procedures, which lie obscured beyond the view and understanding of the insured.

**C.    State Farm Employs an Array of Bad Fath Claims Handling Tactics to Perpetuate the Scheme**

34.    After State Farm's agent binds the policy without inspection, State Farm's Scheme turns on a series of bad-faith claims handling tactics, which help State Farm justify denials of valid claims. These practices include, but are not limited to, the following:

35.    **State Farm employs a narrow and limited definition (as well as restrictive claims handling protocols) for hail damage.** This allows State Farm adjusters to deny claims even when their loss inspection clearly shows hail damage to the insured roof. State Farm's narrow

14

and limited definition is absent from the four corners of the policy and hidden from the insured until State Farm uses it to deny a valid claim. State Farm's captive agents (including Agent here) are fully aware of the narrow and limited definition, this critical disclosure is concealed and State Farm's insureds are wholly unaware of coverage limitation until they suffer a loss, file a claim, and receive a denial. It is only when the insured becomes the latest victim of State Farm's Scheme that the insured learns of State Farm's internal limitations to its coverage regarding hail damage. This is precisely what happened to Plaintiffs.

36.    **State Farm's adjusters misattribute damage to non-covered causes of loss.** State Farm's adjusters find damage to the insured property, but attribute that damage to a non-covered cause of loss—most commonly, "wear and tear," "pre-existing damage", or "manufacturer defect". With regard to roof shingles, State Farm often misclassifies shingle damage as "granular loss." This finding flies in the face of Defendants' representations and/or material ommissions, which are inherent to the act of procuring, binding, and renewing coverage. Critically, Defendants expressly and/or impliedly represent that the Insured Property qualifies for the coverage bound by virtue of the act of binding the coverage. Thus, if the roof suffered from a manufacturer defect, pre-existing damage, or substantial wear and tear, the roof may not qualify for coverage (whether at inception or annual renewal).

37.    **State Farm adjusters misstate the date of loss.** If the insured is unable to pinpoint the exact date of loss, State Farm's adjuster uses the opportunity to further the Scheme and justify State Farm's pre-ordained denial of the claim. In these instances, State Farm adjusters review the Accuweather data and *choose* a date of loss that either (a) falls outside its hidden one-year limitation or (b) shows insufficient hail occurred to constitute a covered claim under its clandestine

15

rules. If the insured pinpoints a date certain for the date of loss, State Farm may still use Accuweather to justify its wrongful denial of the insured's hail damage claim.

38.    In addition, State Farm subjects its insureds to arbitrary limits on the time to file claims, manipulates damage findings to ensure losses fall under the policy deductible, and even employs its hand-chosen engineering firms (who are dependent on State Farm for business) to drum up sham reports that rubber-stamp its adjusters' misrepresentations.

39.    Each of these aforementioned bad-faith claims handling tactics perpetuates the Scheme and allows State Farm to deny valid property insurance claims.

**D.    Defendants Subjected Plaintiffs to the Scheme**

40.    The manner in which State Farm handled the Claim illustrates State Farm's Scheme and clearly demonstrates State Farm's bad faith.

a.    Plaintiffs' Insured Property was damaged as a result of a wind and hailstorm which occurred in Tryon on or about May 14, 2022. The Insured Property sustained significant wind and hail damage, including large hail impacts, to large portions of the roof—shingles, roof vent, etc. The Insured Property required substantial debris removal.

b.    Due to the extensive storm damage to the Insured Property, Plaintiffs properly and timely submitted the Claim to State Farm.

c.    State Farm's inspection of the Insured Property did not take place until December 17, 2023—nearly seven months after the loss occurred. State Farm's adjuster conducted an inadequate inspection and failed to identify the vast majority of damage to the Insured Property. For example, State Farm's adjuster limited the evaluation of the Insured Property roof to the damaged soft metal roof vent. However, State Farm's adjuster indicated in the estimate that "[t]here was not any evidence of wind or hail damage to the shingles" in furtherance of State Farm's Scheme.

16

d.    Moreover, State Farm's adjuster evaluated the damage to the Insured Property "blue shed" and drafted the estimate to replace the shed roof (composition shingles, asphalt starter, ridge cap composition shingles, and roof vent). However, and in accordance with the Scheme, State Farm's adjuster blamed the shed roof damage on "wind" and disclaimed any presence of hail damage in order to avoid replacing the Insured Property's dwelling roof for the same.

e.    State Farm's adjuster also inspected damage to the Insured Property "red shed" and again concluded that there was no hail damage to the shingles. Similiarly, State Farm's adjuster drafted the estimate to reflect damage to the composition shingles/ridge cap composition shingles for the "red shed".

f.    Further, to avoid any replacement for hail damage, and in accordance with the Scheme, State Farm and its adjuster manipulated the date of loss to reflect April 29, 2022, not the reported day of May 14, 2022. This Scheme tactic by State Farm enabled it to disregard the amount of severe hail damage on the actual date of loss.

g.    Despite the extensive wind and hail damage to the Insured Property and the State Farm adjuster's finding that the "blue shed" roof needed to be replaced, State Farm prepared a minimal estimate of $1,211.23 for the cost to repair and/or replace the damage to the Insured Property. By way of the Scheme, State Farm and its adjuster arbitrarily and wrongfully concluded that the Insured Property dwelling roof shingles were not damaged by hail and limited the damage to the Insured Property dwelling roof to a single roof vent.

h.    State Farm and its adjuster manipulated the estimate to ensure the Claim fell below the $2,166 Policy deductible.

i.      State Farm subsequently denied the Claim on January 12, 2023 by informing Plaintiffs that the loss was below the $2,166 Policy deductible and no payment could be made. Moreover, State Farm attributed the damage to the Insured Property to wear, tear, age or deterioration in furtherance of the Scheme. This was the first time Plaintiffs had ever been informed by State Farm or its Agent that there were any issues with the condition of the Insured Property, such as "wear, tear, age or deterioration", that would preclude coverage.

j.      An inspection by the State Farm Agent at Policy inception or anytime thereafter upon renewals of the Policy would have revealed any issues with the condition of the Insured Property like the purported issues State Farm identified in its denial letter. However, State Farm's Agent failed to inspect the Insured Property at any time prior to the Claim and never disclosed to Plaintiffs or State Farm any issues with the condition that would preclude coverage in violation of State Farm's own internal policies, procedures and underwriting guidelines.

k.      Contrary to State Farm and its adjuster's manipulated estimate, which failed to account for the entirety of the wind and hail damage to the Insured Property, Plaintiffs' roofing contractor observed such widespread wind and hail damage, including to the dwelling roof shingles, that the roofing contractor advised Plaintiffs the dwelling roof was totaled and required full replacement. State Farm and its adjuster disregarded the opinion of Plaintiffs' roofing contractor in accordance with the Scheme.

l.      Plaintiffs received no payment from State Farm to cover the extensive wind and hail damage to the Insured Property.

## IV.    FRAUDULENT CONCEALMENT

41.    All allegations in the preceding paragraphs of this Petition are fully incorporated as if each were fully set forth herein.

42.    At all relevant times, Defendants concealed material facts about State Farm's Scheme from Plaintiffs. This concealment protected and perpetuated the Scheme, such that Plaintiffs had no way of ascertaining the Scheme or the accrual of any cause of action against Defendants.

43.    The Scheme is an artifice, which State Farm designed to be hidden from its insureds' discovery. To wit, the inherent nature of State Farm's "good neighbor" promises—the duty of good faith and fair dealing State Farm owes its insureds—makes the artifice appear reliable. Insureds of ordinary prudence have no means of discovering the Scheme or their right to pursue recovery under the law.

44.    Defendants' fraudulent concealment tolls the running of any applicable statute of limitations.

## V.    COUNTS

### COUNT ONE: BREACH OF CONTRACT
### *Against Defendant State Farm*

45.    All allegations in the preceding paragraphs of this Petition are fully incorporated as if each were fully set forth herein.

46.    Plaintiffs entered into a contract of insurance (the "Policy") with State Farm to provide homeowner's insurance for the Insured Property. The Policy was in full force and effect at all material times hereto.

47.    Plaintiffs provided proper and timely notice to State Farm of the Claim for damage arising from wind and/or hail, which caused significant damage to the Insured Property.

19

48.    The Policy coverage includes all fortuitous losses—which necessarily includes damage sustained by wind and/or hail. The Policy language does not define, distinguish, or limit wind and/or hail damage in any fashion.

49.    Plaintiffs complied in all material ways with the terms and conditions of the Policy.

50.    State Farm breached its contractual obligations under the terms and conditions of Policy by failing to pay Plaintiffs all benefits owed under the terms and conditions of the Policy and for wrongfully underpaying and denying portions of the Claim.

51.    Consistent with State Farm's pervasive, state-wide fraudulent Scheme described in detail throughout this Petition, State Farm actively, intentionally, and fraudulently concealed its Scheme to deny and/or underpay valid hail damage claims from Plaintiffs. This concealment is an inherent and important aspect of State Farm's Scheme; as State Farm knew its Scheme would work only if it was kept secret.

52.    As a result of State Farm's breach of contract and other wrongful conduct, Plaintiffs incurred damages.

## COUNT II: BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
### ("Bad Faith")
### *Against Defendant State Farm*

53.    All allegations in the preceding paragraphs of this Petition are fully incorporated as if each were fully set forth herein.

54.    At all relevant times hereto, State Farm owed Plaintiffs a duty of good faith and fair dealing.

55.    State Farm knowingly, intentionally, purposefully, wrongfully, and repeatedly breached its duty to deal fairly and in good faith by engaging in at least the following acts and omissions:

      a.    knowingly engaging in a pattern and practice of

    i.    denial-oriented investigations and claims-handling practices;

    ii.    arbitrary and capricious claims handling;

    iii.    denying and or underpaying indemnity payments owed to its first-party insureds on valid hail claims, including Plaintiffs;

    iv.    withholding pertinent benefits, coverages, and other provisions due to Plaintiffs under the terms and conditions of the Policy in violation of the Unfair Claims Settlement Practices Act, 36 O.S. §§1250.1-1250.16;

    v.    limiting and/or denying rights inherent to Plaintiffs;

    vi.    recklessly disregarding said rights;

    vii.    forcing Plaintiffs to retain counsel to recover insurance benefits owed under the terms and conditions of the Policy;

    viii.    manipulating claims to ensure damages fall below the policy deductible;

    ix.    and ignoring covered hail and windstorm damage;

b.    knowingly and purposely failing to

    i.    inspect the Insured Property prior to inception of the coverage and/or maintain current information as to the condition of the Insured Property prior to the loss;

    ii.    notify Plaintiffs, both prior to and at the inception and renewal of the Policy, of any pre-existing damage and other conditions that, if a claim were made, would limit coverage;

    iii.    communicate all coverages and benefits applicable to the Claim;

21

    iv.    perform a proper, timely, fair, and objective investigation of the Claim;

    v.    pay the full and fair amount for the hail damage sustained to the Insured Property in accordance with the Policy's terms and conditions;

    vi.    base its denial of the Claim on a valid, accurate, and reasonable grounds;

    vii.    disclose the Scheme to Plaintiffs; and

    viii.    disclose State Farm's lack of compliance with its own underwriting guidelines, policies, and procedures in denying coverage to Plaintiffs.

56.    State Farm's conduct, as described above, constitutes bad faith and is a material breach of the terms and conditions of the Policy and its underlying insurance contract between the parties. State Farm has no reasonable basis in its refusal to recognize and pay Plaintiffs the agreed replacement cost as per the Policy for damages caused by the wind and hail damage to the Insured Property.

57.    As a consequence of State Farm's breach of the duty of good faith and fair dealing, Plaintiffs sustained damages, including deprivation of monies rightfully belonging to Plaintiffs, and ordinary or garden variety harm of anger, stress, worry, physical and emotional suffering that naturally results from an insurance failure.

58.    State Farm's conduct was intentional, willful, malicious, and/or in reckless disregard of the rights of others. State Farm's actions during the handling of the Claim demonstrate it acted intentionally, and with malice and, breached its duty to deal fairly and in good faith. State

Farm's actions were consistent with an overall collective corporate goal of increasing profits through the systematic underpayment and denial of claims and is sufficiently egregious in nature so as to warrant the imposition of punitive damages.

59.    State Farm enjoyed increased financial benefits and ill-gotten gains as a direct result of the wrongful conduct described above herein, which resulted in the injury to Plaintiffs.

## COUNT III: NEGLIGENT PROCUREMENT OF INSURANCE
### Against Agent

60.    All allegations in the preceding paragraphs of this Petition are fully incorporated as if each were fully set forth herein.

61.    At all material times hereto, Agent acted as State Farm's agent and/or employee. State Farm is thereby vicariously liable for the Agent's conduct.

62.    In procuring the Policy, Agent had a duty to

    a. use reasonable care, skill, and diligence to procure coverage as the insured requested that meets the insured's stated needs;

    b. use reasonable care, skill, and diligence in undertaking the calculation of replacement cost for the insured;

    c. speak accurately and truthfully by informing Plaintiffs of all coverages, advising Plaintiffs of the benefits, risks, limitations and exclusions thereof, and perform a reasonable inspection of the Insured Property prior to procuring the replacement cost coverage and thereafter upon renewal to ensure no changes to the Policy were necessary or required; and

    d. Disclose all material facts with respect to the Scheme as outlined within this Petition.

63.    Agent breached Agent's duty owed to Plaintiffs by:

23

    a. Knowingly and purposefully procuring and renewing

        i. illusory coverage (in that all fortuitous losses are not covered under the Policy);

        ii. coverage deviating substantially and materially from that which Plaintiffs requested;

        iii. a Policy that did not accurately reflect the replacement cost of the Insured Property (*i.e.*, an amount that was 100% insurance to value as represented);

        iv. a Policy that, as written, did not provide coverage to fully restore the Insured Property back to its pre-loss condition;

    b. Failing to

        i. follow and abide by State Farm's underwriting policies/guidelines;

        ii. perform all necessary inspections of the Insured Property;

        iii. confirm the accuracy of the pre-filled information provided by State Farm's replacement cost estimating tool;

        iv. disclose pre-existing damage to the Insured Property;

        v. verify whether its inherent representation to State Farm and Plaintiffs that the Insured Property (including the roof) was in good condition was accurate;

        vi. procure and renew a policy that provided the requested coverage for all fortuitous losses; and

        vii. disclose all material facts of the Scheme as outlined within this Petition.

64. Plaintiffs relied on Agent's representations to substantial detriment.

65.    As a result of Defendants' conduct, Plaintiffs sustained damages, including deprivation of monies rightfully belonging to Plaintiffs, and ordinary or garden variety harm of anger, stress, worry, physical and emotional suffering.

66.    Defendants' conduct was intentional, willful, malicious and in reckless disregard of the rights of others and is sufficiently egregious in nature so as to warrant the imposition of punitive damages. Defendants acted intentionally, and with malice and, breached duties owed to Plaintiffs. Defendants' actions were consistent with their overall collective corporate goal of increasing profits through the systematic underpayment and denial of claims.

## COUNT IV: CONSTRUCTIVE FRAUD AND NEGLIGENT MISREPRESENTATION
### Against All Defendants

67.    All allegations in the preceding paragraphs of this Petition are fully incorporated as if each were fully set forth herein.

68.    Defendants owed Plaintiffs a legal and/or equitable duty to disclose all material facts that may arise out of their relationship as insurer and insured. *Croslin v. Enerlex, Inc.*, 2013 OK 34, ¶17, 308 P.3d 1041.

69.    The concealment of a material fact which substantially affects another person constitutes fraud. *Patel v. OMH Medical Center, Inc.*, 1999 OK 33, ¶34; *Sutton v. David Stanley Chevrolet*, 2020 OK 87, 475 P.3d 847. Fraudulent representations may consist of half-truths calculated to deceive, and a representation literally true is actionable if used to create an impression substantially false. *Sutton*, 475 P.3d at 15. Where the peculiar circumstances give rise to a duty on the part of one of the parties to a contract **to disclose material facts and the party remains silent to his or her benefit and to the other party's detriment**, the failure to speak constitutes fraud. *Id.* (citing *Croslin*, ¶17) (emphasis added).

25

70.    "[A] variety of facts and circumstances [] will give rise to a duty to disclose material facts." The *Sutton* Court reiterated that it has "consistently found the existence of the requisite circumstances, *i.e.*, that which is necessary to create a duty to disclose, when the offending party created a false impression concerning material facts that was relied upon by the other party to his detriment and to the benefit of the offending party." *Id.* at 15.

71.    A negligent or innocent misrepresentation or concealment for constructive fraud occurs when one who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. Negligent misrepresentation can also be based on a material omission. *See Lopez v. Rollins*, 2013 OK CIV APP 43, 303 P.3d 911; *Sutton v. David Stanley Chevrolet*, 2020 OK 87; *Stroud v. Arthur Andersen & Co.*, 2001 OK 76, 37 P.3d 783; *Ragland v. Shattuck Nat'l Bank*, 36 F.3d 983, 992 (10th Cir. 1994) (applying Oklahoma law).

72.    Defendants owed specific duties to Plaintiffs. These duties are encompassed in State Farm's duty of good faith and fair dealing owed to its insureds, as well as specific duties Agent owed Plaintiffs—a duty to exercise reasonable diligence and skill in obtaining and accurately notifying of the nature and character of the insurance procured, the duty in undertaking the calculation of replacement cost for the insured to use reasonable care, skill, and diligence to do so, the duty to speak accurately and truthfully, and the duty to disclose all material facts relating to the Scheme as outlined within this Petition.

73.    Defendants breached this duty by misrepresenting, concealing, or omitting pertinent material facts from Plaintiffs, including (but not limited to) the following:

26

a.    Defendants misrepresented the Insured Property met all underwriting requirements, that all property inspections had occurred, and that the replacement cost values it calculated were accurate and commensurate with reconstruction costs such that the coverage would fully restore, replace and/or repair the Insured Property (including its roof) in the event of a loss by a covered event.

b.    Defendants misrepresented that the Insured Property (and, specifically, its roof) was eligible for the comprehensive full replacement coverage (rather than ACV);

c.    Defendants failed to disclose that pre-existing issues with the Insured Property would either prevent issuance of the replacement cost coverage or limit coverage for any damage during the Policy period;

d.    Agent misrepresented the procurement of the comprehensive coverage Plaintiffs requested;

e.    Defendants misrepresented that the Policy covered all fortuitous losses and that weather-related damage (even cosmetic)—big or small—was fully covered under the Policy;

f.    Defendants failed to disclose all material information to an insured about State Farm's bad faith claims handling tactics, its reliance on undisclosed definitions and standards outside of the Policy, internal and external complaints about State Farm's handling of wind and hailstorm claims, and other material information any insured would deem reasonable in making a purchasing decision.

g.    Defendants failed to disclose to Plaintiffs any of the above misrepresentations and/or omissions, any facts underlying these misrepresentations, or any material facts regarding the Scheme;

27

74.    Nevertheless, Defendants sold and renewed illusory replacement cost insurance coverage to Plaintiffs knowing such statement was untrue.

75.    As a result of both State Farm and Agent's breach of duty, each gained an advantage by misleading Plaintiffs to substantial detriment and prejudice. These breaches of duty induced Plaintiffs to accept, purchase, and renew the State Farm replacement cost policy.

76.    State Farm and Agent's misrepresentations constitute constructive fraud.

77.    At all relevant times, Agent was State Farm's employee and/or agent.

78.    As a result of the Defendants' constructive fraud, Plaintiffs sustained damages, including deprivation of monies rightfully belonging to Plaintiffs, and ordinary or garden variety harm of anger, stress, worry, physical and emotional suffering.

79.    Defendants' conduct was intentional, willful, malicious, and in reckless disregard of the rights of others, and/or was grossly negligent, and is sufficiently egregious in nature so as to warrant the imposition of punitive damages.

## VI.    PRAYER FOR RELIEF

**WHEREFORE**, this Court should enter judgment on behalf of Plaintiffs against all Defendants for:

(a)    Actual and punitive damages each in an amount in excess of $75,000.00;

(b)    Disgorgement of the increased financial benefits derived by any and/or all of the Defendants as a direct result of the Defendants' wrongful conduct; and

(c)    Prejudgment interests, costs and attorneys' fees.

Respectfully submitted,

*Reggie Whitten*

Reggie N. Whitten, OBA No. 9576
Michael Burrage, OBA No. 1350

28

Blake Sonne, OBA No. 20341
Hannah Whitten, OBA No. 35261
John S. Sanders, OBA No. 34990
Jake Denne, OBA No. 35097
**WHITTEN BURRAGE**
512 North Broadway Avenue, Suite 300
Oklahoma City, OK  73102
Office:         405.516.7800
Facsimile:    405.516.7859
rwhitten@whittenburragelaw.com
mburrage@whittenburragelaw.com
bsonne@whittenburragelaw.com
hwhitten@whittenburragelaw.com
jsanders@whittenburragelaw.com
jdenne@whittenburragelaw.com

*Attorneys for Plaintiffs*

*ATTORNEYS' LIEN CLAIMED*
*JURY TRIAL DEMANDED*

29