UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THE REFERRAL CENTER FOR ALCOHOL AND DRUG SERVICES OF CENTRAL OKLAHOMA, INC., )<br><br>Plaintiff,<br><br>vs.<br><br>PHILADELPHIA INDEMNITY INSURANCE COMPANY, and FINANCIAL RISK SOLUTIONS, LLC.,<br><br>Defendants. | Case No. CIV-25-717-R |

## ORDER

Before the Court is Plaintiff's Motion to Remand [Doc. No. 10] contending that Defendant Philadelphia Indemnity Insurance Company's removal was improper. The motion is fully briefed and at issue [Doc. Nos. 11, 12].

## BACKGROUND

This action arises out of Philadelphia Indemnity's adjustment of an insurance claim for hail damage to Plaintiff's roof. Plaintiff initiated this action in state court asserting claims against Philadelphia Indemnity for breach of contract, breach of the duty of good faith and fair dealing, and constructive fraud/negligent misrepresentation. Plaintiff also asserts claims for negligent procurement of insurance and constructive fraud/negligent misrepresentation against Financial Risk Solutions, LLC, an independent insurance agency that sold Plaintiff the policy. Pet. [Doc. No. 1-1] ¶¶ 4, 10, 11.

1

Philadelphia Indemnity removed the action on the basis of diversity jurisdiction contending that FRS, an admittedly non-diverse defendant, was fraudulently joined in the action. In its Motion to Remand, Plaintiff argues that Philadelphia Indemnity has failed to meet its heavy burden of establishing fraudulent joinder.

## STANDARD OF DECISION

"The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013) (quotation omitted). "To establish fraudulent joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Id.* (brackets and quotation omitted). Here, Philadelphia Indemnity relies on on the second prong, which requires showing "that there is no possibility that plaintiff would be able to establish a cause of action against the joined party in state court." *Montano v. Allstate Indem.*, 211 F.3d 1278 (10th Cir. 2000) (unpublished).

Although removability is typically determined on the face of the pleadings, "upon specific allegations of fraudulent joinder the court may pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available." *Smoot v. Chicago, R.I. & P. R. Co.*, 378 F.2d 879, 882 (10th Cir. 1967) (internal citation omitted). "This does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty." *Id.*

## DISCUSSION

Based on Plaintiff's allegations, and the other material in the record, the Court concludes that Philadelphia Indemnity has met its burden of establishing that Plaintiff does not have a viable claim against FRS.

First, Plaintiff asserts that FRS was negligent in the procurement of the insurance policy. Oklahoma law recognizes that an insurance agent has a "duty to act in good faith and use reasonable care, skill and diligence in the procurement of insurance." *Swickey v. Silvey Co.*, 979 P.2d 266, 269 (Okla. Civ. App. 1999). "This duty rests, in part, on specialized knowledge about the terms and conditions of insurance policies generally." *Rotan v. Farmers Ins. Grp. of Companies, Inc.*, 83 P.3d 894, 895 (Okla. Civ. App. 2004) (internal quotations marks and brackets omitted). An insurance agent can therefore be liable to the insured in negligence "if, by the agent's fault, insurance is not procured as promised and the insured suffers a loss." *Swickey*, 979 P.2d at 269. However, "the scope of the agent's duty to use reasonable care, skill, or diligence in the procurement of insurance" is limited to needs disclosed by the insured. *Rotan*, 83 P.3d at 895. Agents "do not have a duty to advise an insured with respect to his insurance needs" and "a general request for adequate protection and the like does not change this duty." *Id*. (internal quotation marks and brackets omitted). Thus, "[t]o discharge their duty to act in good faith and use reasonable care, skill, and diligence in the procurement of insurance, including use of their specialized knowledge about the terms and conditions of insurance policies, insurance agents need only offer coverage mandated by law and coverage for needs that

are disclosed by the insureds, and this duty is not expanded by general requests for 'full coverage' or 'adequate protection.'" *Id*.

Here, Plaintiff alleges that it contacted FRS "to procure full replacement cost commercial insurance coverage from Philadelphia Indemnity" and FRS stated that "it had obtained a replacement cost policy that would provide full replacement cost coverage for the Insured Property in the event of a loss." Pet. ¶ 53. Plaintiff then alleges that it "specifically requested and secured a 100% RCV policy based on the representations to [FRS]." *Id.* Plaintiff also "expressly and/or inherently disclosed concerns and insurance needs" to FRS and, "given Oklahoma's extreme weather," FRS "was aware that the Plaintiff needed and requested replacement cost coverage under a policy that would fully replace the Insured Property's roof in the event of a loss, without exclusion of any weather-related damage." *Id.* at ¶ 54. Plaintiff then claims that FRS negligently procured a policy that provides illusory coverage, deviates substantially from what Plaintiff requested, did not accurately reflect the replacement cost value, and did not provide full replacement cost coverage to fully the restore the property.

The primary problem with this claim is that Plaintiff's own allegations establish that it received the policy it requested. The policy provides replacement cost value coverage, including for wind and hail damage to the roof, and provides a sufficient amount of coverage. Pet. ¶¶ 11, 18, 53. Because Plaintiff received the replacement cost value policy as requested, it cannot possibly show that, "by the agent's fault, insurance [was] not procured as promised." *Swickey*, 979 P.2d at 269.

The dispute here concerns Philadelphia Indemnity's interpretation of the policy and its claims handling practices, not the agent's actions during the procurement stage. Philadelphia Indemnity denied, or partially denied, Plaintiff's claim for storm damage because it determined that there was no hail damage to the roof and interior water damage was due to ponded rainfall and condensate from the rooftop HVAC system. Pet. ¶ 18. But the insurance company's determination that some of the claimed damage was not caused by wind or hail does not mean the coverage is negated. Plaintiff's damages flow from Philadelphia Indemnity's allegedly wrongful adjustment of her claim, not the agent's failure to procure the correct type of policy, type of coverage, or coverage limit. *See Rain Drop Found., Inc. v. State Farm Fire & Cas. Co.,* No. 24-1101-D, 2025 WL 582562, at *4 (W.D. Okla. Feb. 21, 2025) (no viable claim against agent because "Plaintiff's alleged damages arose, not because of the type of insurance procured, but because State Farm refused to replace Plaintiff's roof"); *Steinkamp v. State Farm Fire & Cas. Co.,* No. CIV-22-00047-PRW, 2023 WL 11920886, at *2 (W.D. Okla. Sept. 29, 2023) (no viable claim against agent because "Plaintiff's claim against State Farm depends upon what damage her roof sustained, not the terms of her policy"); *Stafford v. State Farm Fire & Cas. Co.,* CIV-25-08-HE (W.D. Okla. May 25, 2025) ("The fact that a claim under a policy is denied, or paid at a level less than that sought by the insured, does not, without more, render the policy illusory."). Further, although Plaintiff faults FRS for failing to inspect the property or confirm its condition prior to binding coverage, "the Oklahoma cases do not support the idea that an agent is required to personally inspect a premises before binding a policy or that, merely by binding or delivering a homeowner's policy, the agent impliedly or

5

'inherently' represents that no exclusions in the policy potentially apply or that a claim will be paid." *Id.* at 7; *see also Country Gold, Inc. v. State Auto Prop. & Cas. Ins*. Co., No. CIV-14-1398-D, 2015 WL 431638, at *2-4 (W.D. Okla. Feb. 2, 2015) (finding "no legal basis for Plaintiff's negligence claim" based on allegations that the agent failed to inform insured "of the limitations of the insurance policy" and failed to conduct an "underwriting analysis" or make "annual adjustments to the coverage limits");

Plaintiff's second claim asserts that FRS engaged in constructive fraud or made a negligent misrepresentation. A constructive fraud claim under Oklahoma law requires a "breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, … by misleading another to his prejudice, …." Okla. Stat. Ann. tit. 15, § 59(1); *see also Sullivan v. Wyndham Hotels & Resorts, Inc.,* No. 21-7003, 2021 WL 5822690, at *3 (10th Cir. Dec. 8, 2021) (explaining that negligent misrepresentation requires a material misrepresentation, a breach of a duty in making the misrepresentation, and reasonable reliance to the plaintiff's detriment). Such a duty "may arise if a party selectively discloses facts that create a false impression." *Specialty Beverages, L.L.C. v. Pabst Brewing Co.*, 537 F.3d 1165, 1181 (10th Cir. 2008) (applying Oklahoma law). "In other words, one conveying a false impression by the disclosure of some facts and the concealment of others is guilty of fraud even though his statement is true as far as it goes, since concealment is in effect a false representation that what is disclosed is the whole truth." *Id.* (internal quotation marks and brackets omitted).

Plaintiff alleges that "Defendants" misrepresented that the property met all underwriting requirements and was eligible for replacement cost coverage, that all property

6

inspections had occurred, that the replacement cost value it calculated was accurate, and that the policy included coverage for all weather-related damage. Pet. ¶ 70. But none of these alleged misrepresentations by FSV have a causal connection to Plaintiff's alleged loss. Plaintiff's allegations indicates that FSV "secured a 100% RCV policy" from Philadelphia Indemnity, so the property did meet the underwriting guidelines and was eligible for replacement cost coverage. *See Steinkamp*, 2023 WL 11920886, at *4 ("This cannot be a misrepresentation because there is no indication that Plaintiff's property did not meet State Farm's underwriting requirements."). The policy provided coverage for storm damage and there are no factual allegations to show the issued policy excluded a "weather-related loss." Philadelphia Indemnity found covered hail damage, but determined it was below the deductible amount. As to the coverage values, they substantially exceed the amount needed to pay for a roof replacement and there are no factual allegations to demonstrate the replacement cost value FRS allegedly calculated was inaccurate. *Stone v. State Farm Fire & Cas. Co.*, CIV-25-7-D (W.D. Okla. Aug. 20, 2025) (concluding that plaintiff's allegation that the agent failed to undertake an accurate calculation of replacement cost coverage "is either false or irrelevant").

Plaintiff also contends that FRS failed to disclose Philadelphia's "internal coverage definitions and clandestine definitions" and its bad faith claims handling tactics. But Plaintiff does not allege that FRS had specific knowledge of Philadelphia Indemnity's clandestine definitions or bad faith conduct, nor does Plaintiff include allegations showing that FRS made any affirmative statements regarding Philadelphia Indemnity's claims handling or policy interpretation. Although "an agent may by its representations or

7

conduct, assume duties beyond those inherently tied to its role as agent," an agent does not have a "duty to anticipate, and advise the insured as to, anything that might conceivably limit the payment of a future claim" simply because the agent markets, procures, and renews a policy. *Goebel*, No. 2023 WL 11883977, at *4. There are no factual allegations that demonstrate the FRS disclosed any information that would have required it to convey the information Plaintiff asserts was not disclosed. *Stafford*, CIV-25-08-HE at 7. Plaintiff has not identified a misstatement of fact or a supplying of false information sufficient to make out a viable constructive fraud claim.

"Bottom line, there is no basis shown for concluding that [FRS] undertook or otherwise had a duty beyond securing the issuance of the initial and renewal policies for full replacement coverage." *Goebel*, 2023 WL 11883977, at *4. Plaintiff's dispute concerns Philadelphia Indemnity's coverage determination and claims handling practices, not FRS's actions during the procurement and renewal of the policy.

## CONCLUSION

Philadelphia Indemnity has met its burden of establishing that FRS is a fraudulently joined defendant, and its citizenship is therefore disregarded for purposes of determining subject matter jurisdiction. Plaintiff's Motion to Remand [Doc. No. 10] is DENIED and the claims against FRS are dismissed without prejudice.

IT IS SO ORDERED this 16th day of September, 2025.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE